MILLARD MAINTENANCE SERVICE COMPANY, Plaintiff-Appellee, v. GEORGE BERNERO, Defendant-Appellant.

First District (4th Division)   No. 1—90—0155

Opinion filed December 20, 1990.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (James T. Ferrini, Ivar R. Azeris, and Edward M. Kay, of counsel), for appellant.

Lora E. Minichillo and Aaron E. Hoffman, of Schwartz & Freeman, of Chicago, for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

After an evidentiary hearing, Judge Thomas J. O'Brien entered a preliminary injunction on December 18, 1989, enjoining defendant, George Bernero, from using or disclosing certain confidential information belonging to plaintiff, and from contacting or soliciting plaintiff's customers. However, defendant was not prohibited from seeking contracts with parties who were not plaintiff's current customers or who were not serviced by plaintiff on the day he left plaintiff's employ. This is an interlocutory appeal brought pursuant to Supreme Court Rule 307(a) (107 Ill. 2d R. 307(a)).

On appeal, defendant first contends that the trial court's grant of injunctive relief was against the manifest weight of the evidence for the following reasons: (1) the restrictive covenant was unenforceable for lack of consideration; (2) plaintiff failed to demonstrate a protectable interest in its pricing formula; (3) plaintiff failed to demonstrate a protectable interest in its relationship with its customers; and (4) the court erred in precluding testimony seeking to elicit information regarding the alleged unique character of plaintiff's pricing methods. Second, defendant contends that the injunction was overly broad and failed to meet the requirements for a temporary restraining order. Ill. Rev. Stat. 1989, ch. 110, par. 11—101.

## BACKGROUND

Plaintiff, Millard Maintenance Service Co. (hereinafter Millard), is a janitorial contractor that services commercial buildings in downtown Chicago and the suburbs. Millard is one of eight major maintenance service companies in the Chicago area. Millard services approximately 125 buildings. Its customers are the owners and/or managers of these buildings. Roughly 40 of Millard's customers are located in downtown Chicago, while approximately 85 clients are located in the suburbs. Both plaintiff and defendant agree that the maintenance service industry is highly competitive.

Defendant, George Bernero, is a former employee of Millard and is currently an employee of Executive Building Maintenance (hereinafter EBM). Mr. Bernero worked for Millard from September 1980 through January 26, 1989. Mr. Bernero had no previous experience in the building maintenance field prior to working for Millard. He left Millard as a senior account executive. During the course of his employ, Mr. Bernero signed three post-employment anticompetitive agreements with Millard on September 30, 1980, January 1, 1981, and November 21, 1985. The agreement signed in November of 1985 is the subject of this appeal. The relevant portion of the agreement reads as follows:

"10. *Competition.* For a period of two years following termination of his employment, Employee shall not, without the Employer's prior written agreement, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation, or control of any business (the 'Competing Business') of the type and character engaged in by the Employer at the time of such termination provided, however, that the foregoing shall apply only if the Competing Business satisfies either of the following standards:

(a) The Competing Business operates in the Illinois Counties of

(i) Cook,

(ii) Lake, or

(iii) McHenry; or

(b) The Competing Business, directly or indirectly, solicits, diverts, takes away or attempts to solicit, divert, or take away customers of the Employer, which, during the year immediately prior to Employee's termination of employment contracted for service from the Employer, or seeks to cause any of such customers to refrain form contracting with the Employer or assists any other person, firm, or corporation to do any of the above."

Millard alleges that Mr. Bernero breached his employment agreement after leaving Millard by disclosing confidential and proprietary information to EBM. For example, Mr. Bernero submitted a bid on behalf of EBM to provide janitorial services for Boulevard Bank. Prior to leaving Millard, Mr. Bernero submitted a bid to clean the same building. In addition, Mr. Bernero contacted CNA, Hamilton Partners, and Quantum Chemicals, three of Millard's customers, to solicit their business on behalf of EBM.

Millard initiated this present action by seeking injunctive relief to prevent Mr. Bernero from contacting customers and from disclosing confidential information pursuant to the employment agreement. On September 14, 1989, the court entered a temporary restraining order to preserve the status quo pending a hearing and restrained defendant from soliciting any of plaintiff's customers. Mr. Bernero thereafter filed an answer alleging that the employment agreement was unenforceable.

During the hearing on the preliminary injunction, the court heard the testimony of defendant and Mr. Lawrence Kugler, Millard's vice-president of sales. Mr. Kugler testified that a key prerequisite to bid-

ding for a maintenance contract is access to the specific individual in building ownership or management who contracts for maintenance services. Mr. Kugler also testified that it is important for a maintenance service to gain access to those decision makers because they have the power to give a maintenance company the opportunity to bid. Millard and its sales employees could identify those decision makers and gain access to them because of Millard's size and reputation. Once a Millard salesperson, such as Mr. Bernero, gains access to the key decision maker, he or she tries to persuade the decision maker to give Millard an opportunity to bid.

If Millard is granted an opportunity to bid, its operations supervisor walks through the building with the salesperson. During the walk-through, Millard determines the specific needs of the customer, the type of equipment and supplies needed, the number of personnel required, and any other factors which should be considered in the bidding process. These may include special types of marble, wood, or other surfaces requiring special equipment or care.

After the walk-through, the salesperson consults Millard's management and prepares the bid. Management evaluates the market and any competitive considerations which may result in an adjustment of the bid. Mr. Kugler testified that several of Millard's costs factors are unique and confidential. He cited, for example, the manner in which Millard amortizes equipment costs and passes those costs on to its customers. The trial court specifically held that Millard's workers' compensation rate and its premiums for public liability insurance, based upon its claims history, are confidential. The trial court also found that the overhead and profit margin which Millard added to its bids was confidential.

Mr. Bernero was on Millard's sales staff, and he made sales calls to various prospective clients. He also conducted walk-throughs. The trial court found that defendant gained access to customers whom he would not have been able to contact but for his employment with Millard. In addition, Millard trained defendant to compute and prepare bids. Mr. Bernero attended frequent sales meetings where the general bidding process and specific bids were discussed. Mr. Bernero acknowledged that he learned Millard's pricing practices and how Millard calculates overhead and profits. While defendant was employed at Millard, he learned confidential information regarding Millard's business practices, philosophy, pricing, and prices charged to specific customers.

Both plaintiff and defendant agreed that contracts, long-term customer relationships and contract renewals are acquired on the basis of

quality service and integrity. Millard's management and sales staff devoted substantial time and resources to develop and maintain good relationships with Millard's customers. Once Millard is awarded a contract, supervisory personnel maintain daily contact with the building's owner or manager. In addition, Millard's operations and maintenance personnel are on the customer's premises daily. Those relationships were also nurtured through social outings. Mr. Bernero admitted that Millard personnel made an effort to maintain a relationship with existing customers.

As a result of Millard's efforts, two of Millard's customers have been clients in excess of 15 years, another customer has been with Millard in excess of 36 years, and still another client has been a customer of Millard for more than 50 years. Millard's seven largest customers compose 70% of its business. The trial court noted that Millard had "virtual perpetual contact with its seven largest customers" and recognized that Millard had a near-permanent relationship with its customers.

Mr. Bernero filed a notice of appeal 30 days after the trial court entered an injunction order in favor of Millard. Mr. Bernero asks this court to reverse the injunction.

OPINION

I

Defendant first contends that the injunction entered against him should be set aside because the granting of injunctive relief was against the manifest weight of the evidence.

■■ A party seeking an injunction must establish that it has a clear right which ought to be protected; that it is likely to succeed on the merits; that there is no adequate legal remedy; and that irreparable harm will occur if the injunction is not granted. (*Preferred Meal Systems, Inc. v. Guse* (1990), 199 Ill. App. 3d 710, 718; *A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 791; *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1050.) The trial court found that plaintiffs satisfied these requirements. The trial court is vested with the discretion to grant or deny injunctive relief. *A.B. Dick Co.*, 159 Ill. App. 3d at 791; *McRand, Inc.*, 138 Ill. App. 3d at 1050; *Office Electronics, Inc. v. Grafic Forms, Inc.* (1978), 56 Ill. App. 3d 395, 398.

■■ The role of the reviewing court is to determine whether the trial court's findings are contrary to the manifest weight of the evidence. (*McRand, Inc.*, 138 Ill. App. 3d at 1050-51.) The trial court's

findings will not be set aside absent a showing of an abuse of discretion. (*McRand, Inc.*, 138 Ill. App. 3d at 1050.) We will not set aside this injunction unless defendant can show that the trial court abused its discretion and ruled against the manifest weight of the evidence.

■■ ■ Whether injunctive relief should have been granted depends upon the enforceability of the post-employment restrictive covenant. Such a covenant is unenforceable when its sole purpose is to restrict competition. (*A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 792.) "[O]rdinarily an employer has no proprietary interest in its customers." (*Preferred Meal Systems, Inc. v. Guse* (1990), 199 Ill. App. 3d 710, 718.) In addition, an individual has a fundamental right to pursue a particular occupation for which he is trained. (*ILG Industries, Inc. v. Scott* (1971), 49 Ill. 2d 88, 93.) Moreover, "[o]ne who has worked in a particular field cannot be compelled to erase from his mind all of the general skills, knowledge and expertise acquired through his experience." *ILG Industries*, 49 Ill. 2d at 93-94.

■■ ■ A post-employment covenant will be enforced if it has reasonable terms. A covenant must be "reasonably necessary to protect the interests of the employer." (*McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1051; see also, *A.B. Dick Co.*, 159 Ill. App. 3d at 792.) "A restrictive covenant in an employment agreement is generally held to be enforceable if it is reasonable in geographical and temporal scope and it is necessary to protect a legitimate business interest of the employer." (*Shapiro v. Regent Printing Co.* (1989), 192 Ill. App. 3d 1005, 1010; *Corroon & Black of Illinois, Inc. v. Magner* (1986), 145 Ill. App. 3d 151, 162.) Courts also consider the unique facts and circumstances of the case when determining the reasonableness of a restrictive covenant. *Shapiro*, 192 Ill. App. 3d at 1009; *A.B. Dick Co.*, 159 Ill. App. 3d at 792; *McRand*, 138 Ill. App. 3d at 1051.

■ The court must make two determinations prior to analyzing the reasonableness of a covenant not to compete. First, the court must find that the covenant is ancillary to a valid contract. The covenant must be subordinate to the contract's main purpose. (*Union Trust & Savings Bank v. Kinloch Long Distance Telephone Co.* (1913), 258 Ill. 202, 207.) Second, the court must determine whether there is adequate consideration to support the covenant not to compete. (*Union Trust & Savings Bank*, 258 Ill. at 207; see also *Storer v. Brock* (1933), 351 Ill. 643; *Linn v. Sigsbee* (1873), 67 Ill. 75.) Absent adequate consideration, a covenant, though otherwise reasonable, is not enforceable.

A

First, defendant asserts that the grant of injunctive relief was erroneous because the restrictive covenant is unenforceable due to lack of consideration. Plaintiff maintains that defendant's continued employment constituted sufficient consideration. Defendant contends that his continued employment constituted insufficient consideration. Defendant relies upon *Sufficiency of Consideration for Employee's Covenant not to Compete, Entered into after Inception of Employment* (Annot., 51 A.L.R.3d 825 (1973)). We find that there was adequate consideration for the covenant.

■ In Illinois, continued employment constitutes adequate consideration for a post-employment covenant not to compete. In *Corroon & Black of Illinois, Inc. v. Magner* (1986), 145 Ill. App. 3d 151, we held that "continued employment for a substantial period is sufficient consideration to support an employment agreement." (*Corroon,* 145 Ill. App. 3d at 163.) Similarly, in *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, we concluded that "continued employment for a substantial period is sufficient consideration to support the employment agreement." *McRand, Inc.,* 138 Ill. App. 3d at 1055; see also *Office Electronics, Inc. v. Grafic Forms, Inc.* (1978), 56 Ill. App. 3d 395; *Smithereen Co. v. Renfroe* (1945), 325 Ill. App. 229.

■ The facts of the case at bar are analogous to the facts in *Corroon* and *McRand, Inc.* In *Corroon,* plaintiff signed a similar agreement and subsequently worked for defendant for four more years. The court held that "plaintiff gave to Magner four years of continued employment in exchange for signing the agreement. We hold that the trial judge erred in ruling that the employment agreement between plaintiff and Magner lacked consideration." (*Corroon,* 145 Ill. App. 3d at 163.) In *McRand, Inc.,* defendant remained an employee at McRand, Inc., for eight years after signing the original covenant, and for two years after signing the covenant at issue in the case. (*McRand, Inc.,* 138 Ill. App. 3d at 1055.) In the case at bar, defendant signed two agreements on September 30, 1980, and January 1, 1981, respectively. The third agreement which defendant executed on November 21, 1985, is the subject of this appeal. Defendant thereafter continued as an employee until July 26, 1989. In keeping with the aforementioned case law, we find that sufficient consideration exists for the enforcement of this covenant.

Defendant's reliance upon *Sufficiency of Consideration for Employee's Covenant not to Compete, Entered into after Inception of Employment* (Annot., 51 A.L.R.3d 825 (1973)) is improper. This secondary authority failed to cite any Illinois cases which hold that continued

employment is inadequate consideration for a covenant not to compete. Furthermore, defendant's denial that he remained an employee in consideration of the agreement does not pass muster.

## B

Next, defendant alleges that the trial court's grant of injunctive relief was against the manifest weight of the evidence because plaintiff had no protectable interest in its pricing formula. Defendant maintains that the pricing formula must be a trade secret in order to merit legal protection and that plaintiff was not entitled to injunctive relief because it failed to demonstrate that its pricing methods constituted a trade secret. Plaintiff maintains that it had a protectable interest because its pricing formula constituted protectable confidential information. We hold that plaintiff had a protectable interest because the information defendant obtained regarding plaintiff's pricing formula was confidential.

This court has explicitly rejected the notion that "only trade secrets—as distinct from confidential information—are entitled to legal·protection." (*Shapiro v. Regent Printing Co.* (1989), 192 Ill. App. 3d 1005, 1011.) A restrictive covenant will be enforced "where the former employee learned trade secrets *or acquired* other *confidential information while in plaintiff's employ and subsequently attempted to use it for his or her own benefit* [citation]." (Emphasis added.) *Shapiro*, 192 Ill. App. 3d at 1010-11; see also *A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 792.

The trial court found that plaintiff's pricing formula was confidential information. Judge O'Brien made the following ruling:

"[I]nternal costs or confidential particularized plans or processes developed by the employer which are unknown to others in the industry and in which the employer has an advantage over its competitors are protectable.

Thus, the internal costs of Plaintiff as to a particular building that is bid, such as its worker's compensation [or] public liability insurance premium cost and its arbitrary setting of profit margin are *confidential* in Plaintiff's business." (Emphasis added.)

Plaintiff's pricing formula was confidential. Plaintiff initially bases its bid upon the cost of labor. Then the salesperson adds various costs including workers' compensation, public liability insurance, equipment, supplies, payroll tax, overhead and a profit margin. Plaintiff's workers' compensation rate and its public liability insurance premiums are confidential because they are based upon plaintiff's claims

history. In addition, plaintiff's overhead and profit margin are obtained from written Millard guidelines which are confidential.

The record shows that Millard regarded its customer information as confidential. Millard's customer files were maintained in locked desk drawers, or in a locked file room with a system for checking out customer files. If Mr. Kugler saw any customer information left unattended, he insisted that the person handling the file place it in a secure location. We will not set aside the trial court's finding because it is not contrary to the manifest weight of the evidence.

## C

Defendant also contends that the grant of injunctive relief was against the manifest weight of the evidence because plaintiff failed to demonstrate a protectable interest in its relationship with its customers. Plaintiff maintains that the trial court properly found that it had a protectable interest in its relationship with its customers. We agree with plaintiff.

■■■ In Illinois, an employer has a protectable interest in its customers, and restrictive covenants are usually enforced in situations " '(1) where, by the nature of the business, [the employer] has a near-permanent relationship with its customers and but for the employment, [the employee] would not have had contact with [the customers] ***.' " (*Shapiro v. Regent Printing Co.* (1989), 192 Ill. App. 3d 1005, 1010-11, quoting *Reinhardt Printing Co. v. Feld* (1986), 142 Ill. App. 3d 9, 16; see also *A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 792.) "Trade secrets are not necessary in order to establish a protectable interest in an employer's customers." *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1051.

■■■ ■ A court may consider the following factors when determining whether a near-permanent relationship exists between an employer and its customers:

> "(1) the number of years the employer required to develop the clientele, (2) the amount of money the employer invested in developing the clientele, (3) the degree of difficulty in developing the clientele, (4) the amount of personal customer contact by the employee, (5) the extent of the employer's knowledge of its clientele, (6) the length of the time the customers have been associated with the employer, and (7) the continuity of the employer-customer relationship." (*A.B. Dick Co.*, 159 Ill. App. 3d at 793.)

We have found that the amount of time and money it takes for an employer to develop a clientele is an indicator of how long the firm and

748

its clients intend to remain affiliated. (*McRand, Inc.*, 138 Ill. App. at 1051.) "People rarely invest a great deal of time in a business relationship that they do not intend to maintain." *McRand, Inc.*, 138 Ill. App. at 1051.

■■■ Upon applying the aforementioned principles to the case at bar, we conclude that plaintiff had a near-permanent relationship with its customers. The maintenance business is very competitive. The record shows that plaintiff devoted substantial resources to developing and maintaining a clientele. In addition, plaintiff and its sales staff made an effort to develop and maintain close personal relationships with the decision makers in firms that were customers. These relationships were nurtured through social outings and personal visits. Finally, five of plaintiff's largest customers have done business with plaintiff in excess of 15 years.

The second part of the test is whether defendant would not have had contact with the customers but for the employee's association with the employer. The record shows that before plaintiff hired defendant as a salesperson in 1980, defendant had no experience in the maintenance industry. Defendant concedes that while he worked for plaintiff he learned how to clean a building, how to call on current and prospective clients, and how to prepare and compute bids. Defendant was also given leads to potential customers by plaintiff. Defendant would not have had contact with plaintiff's customers but for his association with plaintiff. Accordingly, we affirm the trial court's finding that plaintiff had a protectable, near-permanent relationship with its customers.

### D

Defendant next alleges that the grant of injunctive relief was against the manifest weight of the evidence because the lower court erred when it precluded testimony seeking to elicit information regarding the "unique" character of plaintiff's pricing methods. Defendant maintains that although the court may exercise reasonable discretion in regulating or limiting cross-examination, he had a right to cross-examine plaintiff on the "unique" character of its pricing method because plaintiff testified about it on direct examination. Defendant failed to cite any cases in support of his contention, but he relies upon 4 B. Jones & S. Gard, Evidence §909, at 105 (5th ed. 1958). We affirm the trial court's ruling.

■■■ "Cross-examination is a matter of right [citations] and *** an important aspect of due process [citation]." (F. Cleary & M. Graham, Handbook on Illinois Evidence §611.9, at 416 (5th ed. 1990).)

"The scope of cross-examination is limited to the *subject* matter of direct examination ***." (Emphasis added.) (F. Cleary & M. Graham, Handbook on Illinois Evidence §611.11, at 418 (5th ed. 1990), citing *People v. van Dyke* (1953), 414 Ill. 251; *Stafford v. Fargo* (1864), 35 Ill. 481; *People v. Hosty* (1986), 146 Ill. App. 3d 876.) "With respect to cross-examination [on a particular] subject ***, the extent of cross-examination is subject to the broad discretion of the trial court." F. Cleary & M. Graham, Handbook on Illinois Evidence §611.11, at 421 (5th ed. 1990), citing *People v. Kellas* (1979), 72 Ill. App. 3d 445.

■■■ The trial court properly limited the scope of defendant's cross-examination. The subject matter of the testimony in question was the confidential nature of plaintiff's pricing formula. The subject matter of plaintiff's testimony was not the uniqueness of the pricing formula. We will defer to the discretion of the trial court and affirm its finding.

For the aforementioned reasons, we hold that the trial court's injunction was not contrary to the manifest weight of the evidence. The trial court did not abuse its discretion. Therefore, we will not set aside its ruling.

## II

Finally, defendant contends that the injunction order entered by the trial court was unreasonable and overbroad, in violation of Illinois law. Plaintiff maintains that the injunction reasonably protected its business interests. We find that the agreement was reasonable.

■■■ The statute, in relevant part, provides as follows:

"Every order granting an injunction and every restraining order shall set forth the reasons for its entry; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." (Ill. Rev. Stat. 1989, ch. 110, par. 11—101.)

Defendant also relies upon *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, and *Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, which support the principle that an injunction should be reasonable in scope and no broader than required to protect a plaintiff's legitimate business interest.

■■■ The reasonableness of a post-employment covenant not to compete is not evaluated pursuant to section 11—101. A restrictive

covenant's reasonableness is measured by its hardship to the defendant, its effect upon the general public, and the reasonableness of the time, territory, and activity restrictions. *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1056-57.

The agreement does not pose an unreasonable hardship for Mr. Bernero because he is free to compete with Millard and solicit any customer that is not identified in the order. The order expressly states that defendant is not prohibited from seeking contracts from parties who are not current customers of plaintiff or who were not serviced by plaintiff on the day defendant left. In addition, the order does not prohibit defendant from seeking contracts in the future from plaintiff's current customers who terminate their relationship with plaintiff prior to the end of the two-year restrictive period. Furthermore, the order does not have an injurious effect upon the general public. The public is free to seek the services of EBM.

Finally, when determining whether post-employment covenant restrictions are reasonable, courts evaluate the time, territory, and activity restrictions. We find that the restrictions are reasonable. The time restriction is reasonable in light of the fact that it took a great deal of time for plaintiff to acquire and maintain clients. (See *McRand, Inc. v. van Beelen* (1985), 138 Ill. App. 3d 1045, 1058-59.) We also hold that the three-county territorial restriction is reasonable. The Illinois Supreme Court has precluded former employees from competing in broad geographic markets in prior cases. (See *Cockerill v. Wilson* (1972), 51 Ill. 2d. 179.) We also find that the activity restraint in this case is reasonable. This court has held that an employer may have a protectable interest in its customers and bar solicitation of those customers with post-employment covenants not to compete. See *A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786.

The reasonableness of a restrictive covenant is also determined by the facts of the case. (*Shapiro v. Regent Printing Co.* (1989), 192 Ill. App. 3d 1005, 1010.) The facts in this case support the trial court's findings.

For the aforementioned reasons, we affirm the trial court's verdict.

Affirmed.

McMORROW, P.J., and JIGANTI, J., concur.