**GREEN RIVER BOTTLING COMPANY,**
Plaintiff–Counterdefendant–Appellee,

v.

**GREEN RIVER CORPORATION** and Daniel J. Meyers, Defendants–Counterplaintiffs/Third–Party Plaintiffs–Appellants,

v.

**A–BARR SALES, INCORPORATED,** Sethness–Greenleaf, Incorporated, Bernard Barc, et al., Third–Party Defendants–Appellees.

No. 92–3577.

United States Court of Appeals,
Seventh Circuit.

Argued April 2, 1993.

Decided July 1, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 23, 1993.

John C. Brezina (argued), Burton S. Ehrlich, Brezina & Buckingham, Oak Brook, IL, for Green River Bottling Co.

William B. Kohn, Chicago, IL (argued), John J. Erhart, Gregory P. Kaihoi, Fredrikson & Byron, Minneapolis, MN, for Green River Corp. and Daniel J. Meyers.

Walter J. O'Brien, II, Angela Imbierowicz, O'Brien & Associates, Oakbrook Terrace, IL, for A–Barr Sales, Inc., Sethness–Greenleaf, Inc., Bernard Barc, J. Barry McRaith and George Sundheim.

Before POSNER and EASTERBROOK, Circuit Judges, and TIMBERS, Senior Circuit Judge.*

POSNER, Circuit Judge.

This is an appeal under 28 U.S.C. § 1292(a)(1) from the denial of a preliminary injunction in a diversity case arising out of a contract dispute. The dispute is a simple one, involving small stakes, but it has been allowed to escalate. The case is three and a half years old, with no end in sight. As sometimes happens, the lawyers and the district judge have allowed the case to get out of hand. It must be placed on a steady course to an early resolution.

"Green River" is the trademark under which Sethness–Greenleaf, Inc. sold to bottlers a soft drink, and to restaurants a fountain syrup, manufactured according to a formula that was Sethness–Greenleaf's trade secret. In 1985 Sethness–Greenleaf sold the Green River business, including the trademark and the trade secret, for the modest sum of $75,000, to Green River Corporation. The purchase price was to be paid as follows: Green River Corporation agreed to buy its requirements of "Green River" products from Sethness–Greenleaf, and for each gallon sold Sethness–Greenleaf would apply $5 toward the payment of the purchase price of the business. When the price was paid in full, the secret formula for the manufacture of Green River beverage and syrup, till then held in escrow, would be released to Green River Corporation, which would then make its own arrangements for the manufacture of the products. In the event of a default, Sethness–Greenleaf would be entitled to repossess the formula.

Green River Corporation fell behind in its payments and Sethness–Greenleaf declared a default, stopped supplying Green River Corporation, and demanded the return of the formula from the escrow agent. Unwilling to stop doing business under the "Green River" name, Green River Corporation procured a green soft drink from another producer and sold it under the "Green River" name, precipitating this suit by Sethness–Greenleaf. Filed initially in state court but removed to federal court, the suit alleged a breach of contract and sought among other relief a permanent injunction against Green River Corporation's using the "Green River" trademark on a soft drink bought from another supplier. This suit was joined with a parallel suit by Green River Bottling Company against Green River Corporation. Green River Bottling Company was a distributor of "Green River" soft drink. When it discovered that Green River Corporation was supply-

---

* Hon. William H. Timbers of the Second Circuit, sitting by designation.

ing it with a soft drink that had been manufactured according to a different formula, it stopped buying from Green River Corporation and attempted to obtain the product from Sethness–Greenleaf but desisted when Green River Corporation threatened legal action against it. So it now sells no "Green River" soft drinks and claims to have lost profits as a result. Sethness–Greenleaf is not selling any "Green River" soft drinks but continues to supply "Green River" fountain syrup to the restaurant of the Chicago Bar Association across the street from this court. It is not clear from the record whether Green River Corporation has found another Chicago distributor, but "Green River" beverages were spotted recently at the Chicago restaurant "Heaven on Seven."

The plaintiffs, Sethness–Greenleaf and Green River Bottling Company, moved for summary judgment, which the district judge granted but then rescinded, persuaded by Green River Corporation that there was a genuine issue of material fact concerning the terms of payment under the contract and whether Green River Corporation had violated them by its delay in paying. All parties moved for preliminary injunctions. The judge has not acted on the plaintiffs' motions. He has, however, denied the defendant's motion. That motion sought to enjoin Sethness–Greenleaf from continuing to sell fountain syrup under the "Green River" name. Such sales, Green River Corporation contends, infringe the trademark that it acquired by the purchase of the "Green River" business from Sethness–Greenleaf; even if Green River Corporation is in default under the contract, Sethness–Greenleaf would not be entitled to prevent Green River Corporation from using the "Green River" trademark until a final judgment resolving the contract dispute in Sethness–Greenleaf's favor is entered. The district judge disagreed. He ruled that if there was a default on the contract, the trade secret, along with the right to use the "Green River" trademark, would revest in Sethness–Greenleaf as of the date of the default; he relied on a provision in the contract that in the event of a default the escrow agent is to redeliver the formula to Sethness–Greenleaf "as soon as practica-

ble." He therefore denied the preliminary injunction, precipitating this appeal.

■ The district judge's order denying the preliminary injunction was terse. He did not discuss the balance of irreparable harms. He said only that Green River Corporation could not demonstrate a likelihood of success because he had ruled, in denying cross-motions for summary judgment, that there was a genuine issue of material fact concerning whether Green River Corporation had defaulted. Green River Corporation is right to be dissatisfied with the district judge's articulation of the grounds for denying the preliminary injunction. As long as the judge was satisfied that the corporation had more than a trivial chance of succeeding on the merits, he should have considered the irreparable harms to the parties of granting and of denying the request for a preliminary injunction, respectively. *International Kennel Club v. Mighty Star, Inc.*, 846 F.2d 1079, 1084 (7th Cir.1988). Even if Green River Corporation had only a modest chance of prevailing on the merits, it would be entitled to a preliminary injunction if it could show that the denial of the injunction would inflict severe irreparable harm on it while the grant of the injunction would inflict little or no irreparable harm on the plaintiffs. *Curtis v. Thompson*, 840 F.2d 1291, 1296 (7th Cir. 1988); see generally *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir.1984). The fact that the judge had not determined the merits of the parties' substantive claims on summary judgment did not disentitle any of the parties to a preliminary injunction. 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948 at pp. 456–57 (1973). On the contrary, a party that has obtained summary judgment in its favor has won the case and doesn't need a *preliminary* injunction.

■ But we do not think the inadequacies in the judge's opinion warrant a reversal. If it is plain that the party seeking the preliminary injunction has no case on the merits, the injunction should be refused regardless of the balance of harms. *Curtis v. Thompson, supra*, 840 F.2d at 1296–97. It is plain here. The main argument Green River Corporation made in requesting a prelimi-

nary injunction (and repeats in this court) was not that it hadn't defaulted (the issue raised by the summary-judgment motions) but that it and it alone was entitled to use the "Green River" trademark even if it was in default, because it owned it. Even in this court Green River Corporation does not argue that it is likely to prevail on the issue of default, and, if not, then like Judge Nordberg we do not see how it can prevail on its trademark-infringement claim. A trademark cannot be sold "in gross," that is, separately from the essential assets used to make the product or service that the trademark identifies. *Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 676 (7th Cir.1982); *Pepsico, Inc. v. Grapette Co.*, 416 F.2d 285, 289 (8th Cir.1969); 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 18.01[2], [3] (3d ed. 1992). The discontinuity would be too great. The consumer would have no assurance that he was getting the same thing (more or less) in buying the product or service from its new maker. The contract in this case did not contemplate a sale in gross. The trademark was to stay with the formula—the essential asset in the production of the trademarked product—owned by Sethness–Greenleaf. Until the purchase price was paid in full, products manufactured under the formula would be sold to Green River Corporation, which would affix the "Green River" label to it but would be doing so merely as a licensee. After the purchase price was paid, the formula would go to Green River Corporation so that it could make its own arrangements for manufacturing the products. Until that happened Green River Corporation had no right to affix the "Green River" name to products manufactured under a different formula. Its action in doing so violated the contract. Unauthorized use of a trademark is an infringement, and we have held that the infringement of a trademark is not a proper self-help remedy for a breach of contract. *Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 282 (7th Cir.1992). So the fact that Sethness–Greenleaf may or may not have committed its own breach of contract when it stopped supplying Green River Corporation did not excuse the latter's action in affixing the trademark to a different product; and far from Sethness–Greenleaf's having infringed the trademark, it was Green River Corporation that did so.

The point is not that the product to which a trademark is affixed can never change. Many trademarked products, ranging from Chevrolets to Coca–Cola, have changed enormously over the years. But in these cases the consumer always knew whose product it was that he was getting. The prohibition of sales in gross protects his expectations. But the consumer who buys "Green River" soft drink manufactured under a formula to which Green River Corporation turned only when it could no longer obtain a product manufactured in accordance with what till then had been the one and only authorized formula—the essential asset undergirding the production of "Green River" soft drinks—is the unwitting pawn in a contract dispute, being sold a different product, made by a different producer, from the product and producer that the trademark had been meant to identify. If Sethness–Greenleaf broke the contract when it stopped selling the product to Green River Corporation, the latter's remedy was to sue for breach of contract, not to palm off a different product as the product it could no longer obtain. Having no right to continue using the trademark after losing access to the trademarked product, Green River Corporation also has no right to prevent Sethness–Greenleaf from using the trademark on the ground that by doing so it is confusing consumers. Any confusion is due to Green River Corporation's palming off another product as "Green River."

By doing this, moreover, Green River Corporation has committed a breach of contract unrelated to the question whether it defaulted in making payments due under the contract. The placing of the formula in escrow was designed to secure the right to those payments. If Green River Corporation defaulted, Sethness–Greenleaf would be entitled to the return of the formula so that there would be no chance that Green River Corporation, if cut off by its default from buying from Sethness–Greenleaf, could continue in business by getting someone else to manufacture under the formula. By selling a different product under the "Green River"

name Green River Corporation diluted the value of Sethness–Greenleaf's security because, if the trademark is attached to another product and as a result ceases to identify unambiguously the product made according to Sethness–Greenleaf's formula, the "Green River" trademark may be forfeited and if so the value of the formula is likely to diminish. *Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982). Because of the rule against assigning trademarks in gross, the enforcement of security interests in trademarks often is problematic. 1 McCarthy, *supra*, § 18.01[7] at pp. 18–9 to 18–10. But not here, since foreclosure placed the trademark and the trade secret back in the same hands, those of Sethness–Greenleaf.

There is a further ground on which the preliminary injunction had to be denied: so plain is it that Green River Corporation has failed to show any irreparable harm from the denial of the injunction, it would have been an abuse of discretion to grant it. Insofar as Sethness–Greenleaf's continued sale of a small quantity of fountain syrup is depriving Green River Corporation of profits rightfully belonging to it, it can recover these tiny lost profits in a damages judgment at the conclusion of the lawsuit. Insofar as Green River Corporation fears the loss of trademark rights because different products made by different producers are being sold under the same name, it has only to discontinue its sales of the palmed-off product—which trademark law requires it to do anyway—and then if it wins the lawsuit claim the profits resulting from Sethness–Greenleaf's unimpeded sales of the product made in accordance with the escrowed formula and sold under the "Green River" name. If Sethness–Greenleaf as we suspect has no distribution facilities but refuses to allow Green River Corporation to sell the authorized product under some arrangement that would protect Sethness–Greenleaf, for example a lockbox arrangement under which revenues from the sale of "Green River" soft drink would be paid directly to an escrow agent, bypassing Green River Corporation, then the resulting loss to Green River Corporation would, in the event it wins the contract suit, be an item of damages to add to its judgment against Sethness–Greenleaf.

The worst possible situation, because it gratuitously endangers a trademark and may confuse consumers, is the one we have. By virtue of the judge's action in denying Green River Corporation's request for a preliminary injunction while failing to act on the plaintiffs' motions for preliminary injunction, two different products are being sold, by Sethness–Greenleaf (the fountain-syrup version) and Green River Corporation (the soft-drink version), under the "Green River" mark. Meanwhile, a trivial contract suit (remember that the total purchase price was only $75,000) is in its fourth year with no end in sight.

It is plain that until the purchase of the "Green River" business from Sethness–Greenleaf is complete, Green River Corporation has no right to affix the "Green River" trademark to a product not manufactured in accordance with the escrowed formula. Whether it is entitled to obtain that product from Sethness–Greenleaf depends on whether it defaulted on the contract. The issue is a narrow one, as explained in the judge's order denying the plaintiffs' motion for summary judgment. The contract provides that the "terms and conditions of payment" shall be agreed to by the parties from time to time. Pursuant to this provision Sethness–Greenleaf permitted Green River Corporation to buy on credit. But when Green River Corporation was fourteen months in arrears, Sethness–Greenleaf demanded payment and when none was forthcoming declared a default. The only issue is whether the parties orally agreed (there was no written agreement concerning the extension of credit, but Sethness–Greenleaf does not argue that the contract required that the agreement be in writing) to allow Green River Corporation to delay payment for as long as it did. The trial of such an issue should require minimum time and preparation. The case should proceed forthwith to trial and judgment in order to determine the rights to the "Green River" mark.

A<span style="font-variant:small-caps">FFIRMED</span>.