**CURTIS 1000, INCORPORATED, Plaintiff–Appellant,**

v.

**Roy H. SUESS and American Business Forms, Incorporated, Defendants– Appellees.**

No. 94–1059.

United States Court of Appeals, Seventh Circuit.

Argued March 30, 1994.

Decided May 16, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied June 16, 1994.

Michael R. Levinson (argued), Alan S. Dalinka, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for plaintiff-appellant.

Stuart R. Lefstein (argued), Brian S. Nelson, Katz, McAndrews, Balch, Lefstein & Fieweger, Rock Island, IL, for Roy H. Suess.

J. David Jackson (argued), Melinda K. Greer, Laura Keohane, Dorsey & Whitney, Minneapolis, MN, for American Business Forms, Inc.

Before POSNER, Chief Judge, MANION, Circuit Judge, and REYNOLDS, District Judge.*

* Hon. John W. Reynolds of the Eastern District of Wisconsin.

POSNER, Chief Judge.

Curtis 1000, a seller of customized stationery, business forms, and printing services to business firms, brought this diversity suit against a former employee, Roy Suess, and a competitor, American Business Forms. The suit charges Suess with breach of contract in having violated a covenant not to compete that he had signed when employed by Curtis, and charges ABF with having tortiously interfered with Curtis's contract with Suess by inducing him to violate the covenant. Curtis moved for a preliminary injunction against both defendants, which the district court denied, 843 F.Supp. 441 (C.D.Ill.1993), precipitating this appeal under 28 U.S.C. sec. 1292(a)(1).

Suess, who is now in his fifties, had been employed by Curtis as a salesman for 24 years when he quit, effective September 15, 1993, believing he would soon be fired because his supervisors had expressed dissatisfaction with his performance; the company had already advertised for a salesman to cover his two territories (Rock Island County in Illinois and Scott County across the Mississippi in Iowa), presumably as his replacement. ABF, a newish company in the same line as Curtis—it is 12 years old, while Curtis is 111 years old—has been busy hiring salesmen away from Curtis. It hired Suess, five days after he left Curtis, as its first salesman in the two-county area, promising to advance him his expenses of defending against any suit by Curtis to enforce the covenant not to compete. Suess proceeded to solicit current and recent customers of Curtis in the area in violation of the covenant.

Suess never had either a term contract or a tenure contract with Curtis. He was always an employee at will, except that he was entitled to a week's notice of termination. These and other terms of employment were set forth in a written contract that Suess had signed when he was hired back in 1969. Employment at will is of course a contractual relationship and there is often a written contract differing from a term or tenure contract only in being terminable by either party at any time. Suess was told when he was hired that he would have to sign a covenant not to compete, but the covenant was not included in the initial written agreement. It first appeared in a separate document, which he was asked to sign and did sign, two weeks after he was hired, when he completed a training program at Curtis's headquarters and was about to begin his work as a salesman. The covenant forbade him, within two years after leaving Curtis's employ, to call on any person or firm within the two-county area for the purpose of selling a competing product. Curtis gave Suess no money or other separate consideration for signing the covenant not to compete, except insofar as Curtis's retaining him in its employ might be thought a form of consideration. On three subsequent occasions Suess signed a superseding covenant not to compete, and on none of these occasions, either, did he receive any consideration for signing the document other than retention as an employee.

The covenants not to compete that Suess signed at different stages of his employment with Curtis were very similar in all but two respects. First, the original covenant had specified that Illinois law would apply in the event of a dispute, the 1977 and 1981 versions that Georgia law would apply, and the 1985 version—the version that Curtis seeks by means of this lawsuit to enforce—that Delaware law would apply. Delaware is the state in which Curtis is incorporated, although the firm appears not to have any other significant contacts with that state. Its headquarters are in Georgia and many of its covenants not to compete continue to make Georgia law applicable in the event of a dispute. Second, the final covenant permitted Suess to solicit customers in his territory even within the two-year period after he left Curtis's employ, except customers whom he had solicited on Curtis's behalf within two years before he left and to whom Curtis had made at least one sale during that period.

 Applying as he was required to do the conflict of law rules of Illinois, *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1080 (7th Cir.1986), the district judge first held that an Illinois court (and therefore the federal district court in this diversity suit) would not enforce the provision in the

final covenant not to compete that makes Delaware law applicable to disputes concerning the covenant; instead it would apply Illinois law. He had two reasons drawn (of course) from Illinois conflicts law for this ruling: the covenant had an insufficient connection to Delaware, and an Illinois court would consider the Delaware law of covenants not to compete repugnant to the public policy of Illinois. *Fister/Warren v. Basins, Inc.*, 217 Ill.App.3d 958, 160 Ill.Dec. 858, 861–62, 578 N.E.2d 37, 40–41 (1991); *Hartford v. Burns Int'l Security Services, Inc.*, 172 Ill. App.3d 184, 122 Ill.Dec. 204, 205, 526 N.E.2d 463, 464 (1988). The common law of Illinois requires that a covenant not to compete, to be enforceable, secure a "protectable interest" of the employer, *Shapiro v. Regent Printing Co.*, 192 Ill.App.3d 1005, 140 Ill.Dec. 142, 145, 549 N.E.2d 793, 796 (1989), such as a trade secret. *Label Printers v. Pflug*, 206 Ill.App.3d 483, 151 Ill.Dec. 720, 564 N.E.2d 1382, 1387 (1991); *Springfield Rare Coin Galleries, Inc. v. Mileham*, 250 Ill.App.3d 922, 189 Ill.Dec. 511, 517, 620 N.E.2d 479, 485 (1993). Delaware law contains no such requirement. See *Knowles–Zeswitz Music, Inc. v. Cara*, 260 A.2d 171 (Del.Ch.1969); *Faw, Casson & Co. v. Cranston*, 375 A.2d 463 (Del.Ch.1977). Not that there is no judicial supervision of such covenants in Delaware. They will be enforced only if they protect a "legitimate economic interest" of the employer. E.g., *McCann Surveyors, Inc. v. Evans*, 611 A.2d 1, 3 (Del.Ch.1987); *Pollard v. Autotote, Ltd.*, 852 F.2d 67, 72 (3d Cir.1988) (applying Delaware law). But this is a less demanding requirement than that of a "protectable interest," as it extends to the employer's general business "goodwill." *Research & Trading Group v. Pfuhl*, 1992 WL 345465, *12 (Del.Ch.1992); *Knowles–Zeswitz Music, Inc. v. Cara, supra*, 260 A.2d at 175. The Illinois concept does not, as we shall see.

This difference between Illinois and Delaware law was not a problem for the district judge because he concluded that Curtis had demonstrated a protectable interest and had thus satisfied the more demanding standard. But he also concluded that the covenant not to compete was invalid under Illinois law because not supported by consideration. He recognized that several decisions by Illinois's

intermediate appellate court have found covenants not to compete to be adequately supported by consideration in circumstances indistinguishable from those in this case, *Millard Maintenance Service Co. v. Bernero*, 207 Ill.App.3d 736, 152 Ill.Dec. 692, 697–98, 566 N.E.2d 379, 384–85 (1990); *Corroon & Black, Inc. v. Magner*, 145 Ill.App.3d 151, 98 Ill.Dec. 663, 494 N.E.2d 785, 791 (1986); *McRand, Inc. v. Van Beelen*, 138 Ill.App.3d 1045, 93 Ill.Dec. 471, 478–79, 486 N.E.2d 1306, 1313–14 (1985); *Smithereen Co. v. Renfroe*, 325 Ill.App. 229, 59 N.E.2d 545, 551 (1945), and he did not attempt to distinguish those cases. But he was sure that the state's highest court, should it ever take such a case, would throw out the line of intermediate-court decisions as contrary to the fundamental principles of contract law, which with immaterial exceptions refuses to enforce contracts for which there is no consideration.

Because the judge believed that Curtis had no legal leg to stand on, he refused to issue a preliminary injunction against Suess even though he also believed that the firm had demonstrated irreparable harm from Suess's refusal to abide by the covenant not to compete—more such harm, moreover, than would ensue to Suess if the injunction was denied. Suess could solicit anyone in the two-county area who was not a current or recent customer of Curtis, plus anyone, period, in any other part of the state (or, for that matter, the nation), and could be made whole by an award of damages for any harm done him by the injunction, up to the limit of the injunction bond. Although the covenant will expire in September 1995, Curtis is concerned that in the meantime ABF through Suess will obtain a foothold with Curtis's customers, exploiting the knowledge about them that Suess obtained as its salesman.

▮ The judge also denied the preliminary injunction that Curtis had sought against ABF, because if Suess had not broken his contract with Curtis there was no breach for ABF to have induced. It is true that the tort of intentional interference with advantageous business relations no longer requires that the relation interfered with be one embodied in a formal contract; so an employer need not show any more that the employee lured away

by a competitor broke his contract with the plaintiff in leaving. *Vajda v. Arthur Andersen & Co.*, 253 Ill.App.3d 345, 191 Ill.Dec. 965, 973, 624 N.E.2d 1343, 1351 (1993); *Frandsen v. Jensen–Sundquist Agency, Inc.*, 802 F.2d 941, 947 (7th Cir.1986) (Wisconsin law); *Franklin Music Co. v. American Broadcasting Cos.*, 616 F.2d 528, 545 (3d Cir.1979) (Pennsylvania law); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 129, at pp. 981–82 (5th ed. 1984). But interference with a contract—the covenant not to compete—was the only form of intentional interference that Curtis alleged.

▮ Curtis argues that since the balance of harms inclined in its favor, the judge should not have denied the injunction merely because he did not think the company had a good case in law. What is true is that if the party seeking the preliminary injunction would suffer more harm from the denial of it than his opponent would suffer from its being granted, the injunction should be granted even if the party seeking it has no more than a 50–50 chance of winning, and even, in some cases, if the odds are worse. If for example the party seeking the injunction would lose $10,000 if it was denied, and has a 40 percent chance of being in the right, and the other party would lose only $1,000 if the injunction is granted and has (necessarily) a 60 percent chance of being in the right, then the cost of denial of the injunction to the party seeking it, when discounted by the probability that he is in the right, would exceed the cost of granting the injunction to the other party, when discounted by the probability of his being in the right. (That is, $4,000 ($10,000 × .40) is greater than $600 ($1,000 × .60).) E.g., *Green River Bottling Co. v. Green River Corp.*, 997 F.2d 359, 361 (7th Cir.1993); *Curtis v. Thompson*, 840 F.2d 1291, 1296 (7th Cir.1988). But if as in this case the judge, having obtained in the preliminary hearing all the facts that he believes pertinent to deciding which party is in the right, is able to make up his mind that the party seeking the injunction has no legal ground for his case, he should not only deny the injunction, he should dismiss the suit; for he knows how it will come out. The general point is that when the eventual outcome on the merits is plain at the preliminary injunction stage, the judge should, after due notice to the parties, merge the stages and enter a final judgment. Fed.R.Civ.P. 65(a)(2); *Proimos v. Fair Automotive Repair, Inc.*, 808 F.2d 1273, 1277–78 (7th Cir.1987). Only if the final outcome will depend on facts presented at trial, so that there is genuine uncertainty at the preliminary-injunction stage concerning what that outcome will be, should the judge go through the balancing process that we have described.

We must therefore consider the merits of the judge's legal rulings. The ruling on choice of law will be moot if we decide that (1) Curtis has shown a protectable interest and (2) the covenant was supported by consideration under Illinois law. That will show that the covenant is enforceable under Illinois law, and combined with the judge's finding on the balance of harms will establish Curtis's entitlement to a preliminary injunction.

▮ The judge held that Curtis has shown a protectable interest, but that the covenant lacked consideration. Unfortunately, we disagree with both rulings. Take the second first. We need focus only on the last covenant, the one Suess signed in 1985. No doubt if he had refused to sign it Curtis would have fired him, as was its unquestioned right; at least Suess does not question that this would have been the consequence. By signing the covenant, therefore, Suess obtained employment for eight more years— more, probably, though perhaps not much more if he hadn't decided to quit when he did. That continued employment for eight years was worth *something* to Suess and the traditional rule, in Illinois and elsewhere, is that the law does not inquire into the adequacy of the consideration to support a promise, only its existence. *White v. Village of Homewood*, 256 Ill.App.3d 354, 195 Ill.Dec. 152, 155, 628 N.E.2d 616, 619 (1993); *Goodwine State Bank v. Mullins*, 253 Ill.App.3d 980, 192 Ill.Dec. 901, 904, 625 N.E.2d 1056, 1079 (1993).

▮ The traditional rule is not followed, however, in the Illinois cases dealing with covenants by employees not to compete with their employer when they leave his employ.

The cases we cited earlier require that for continued employment to count as consideration it must be for a "substantial period." E.g., *Millard Maintenance Service Co. v. Bernero, supra,* 566 N.E.2d at 384; see also *Frierson v. Sheppard Building Supply Co.,* 247 Miss. 157, 154 So.2d 151, 154 (1963). In one case seven months was held not to be long enough. *Mid–Town Petroleum, Inc. v. Gowen,* 243 Ill.App.3d 63, 183 Ill.Dec. 573, 579, 611 N.E.2d 1221, 1227 (1993). The courts' willingness to depart in this area from the traditional refusal to inquire into the adequacy of consideration displays a sensitivity to the argument which Suess makes that continued employment is an illusory benefit when employment is at will. The minute after he signed the covenant not to compete, Curtis could have fired him and then he would have had received nothing in exchange for the fresh promise represented by his signing of a new covenant. The new covenant was the modification of an existing contract and hence required consideration to be enforceable. *De Fontaine v. Passalino,* 222 Ill.App.3d 1018, 165 Ill.Dec. 499, 505, 584 N.E.2d 933, 939 (1991); *Sciarabba v. Chrysler Corp.,* 173 Ill.App.3d 57, 122 Ill.Dec. 870, 875, 527 N.E.2d 368, 373 (1988). Although it could be argued that if the modification failed for want of consideration it would leave Suess bound by the previous covenant that he had signed, which was actually broader than the 1985 covenant, the counterargument is that the previous covenant would fail for want of consideration too, and likewise *its* predecessor.

Suppose that Curtis, when it asked Suess to sign the final covenant, intended to fire him the minute he signed and wanted to make sure that he would not go to work for a competitor of Curtis. Then Suess would in fact have received no consideration for signing, though he wouldn't know it at the time of signing. The judicially devised requirement of a "substantial period" of postcovenant employment avoids the need to investigate the employer's intentions; it does this by in effect creating an irrebuttable presumption that if the employee was fired shortly after he signed the covenant the consideration for the covenant was illusory. Cf. 1A Arthur Linton Corbin, *Corbin on Con-* *tracts* § 170 (1963). We can assimilate this approach to the general law of contracts, albeit imperfectly, by noting that inadequacy of consideration is always possible evidence of fraud or unconscionability. *White v. Village of Homewood, supra,* 628 N.E.2d at 619; *Goodwine State Bank v. Mullins, supra,* 625 N.E.2d at 1079. And although here the previous covenant might have sprung back into effect if the new one had been struck down on the ground (inapplicable to the previous one) that when tendered to the employee the employer had decided to get rid of him, the parties make nothing of this point, so we shall not pursue it.

One should not think such cases of deceit common. Employers pay a price if they get a reputation for tricky dealings with their employees. Curtis's 111 years in business suggest that it takes the long view, and there is no suggestion that it is entering its "last period" when all bets are off because the firm no longer has a future. It is still in business, almost a decade after Suess signed the last covenant. Employees work under contracts of employment at will because they think it unlikely they will be fired as long as their work is satisfactory and the firm does not encounter rough weather. When Suess was first hired by Curtis, he quit another job. He wouldn't have done so had he thought Curtis would fire him after a few weeks, or months; the probability that he would be retained for a substantial period, though he had no legal entitlement to retention, was sufficient to induce him to give up alternative employment. Nor was he mistaken. He remained an employee of Curtis for twenty-four years, even though he was at all times without legal protection against being fired. Up until the end of this period, when he saw or thought he saw the handwriting on the wall, he had not only a well-founded but an accurate expectation that he would continue to be employed by Curtis.

The present case is only superficially like *Robinson v. Ada S. McKinley Community Services, Inc.,* 19 F.3d 359 (7th Cir.1994), where, applying Illinois law, we found that a modification in the terms of employment was unenforceable because unsupported by consideration. Robinson had been hired under a

contract that appeared to give her tenure after a brief probationary period. After she completed the probationary period her employer adopted a new policy applicable to all existing employees, authorizing termination at will. She continued working (and being paid) and the issue was whether this continued employment was consideration for the modification in the terms of the employment relation. We held that it was not. Since Robinson had tenure (or appeared to have it—we remanded for further consideration of that question), her employer had given her nothing when it continued employing her after announcing the new policy. This case is the opposite. It was *because* Suess did not have tenure that by continuing to employ him after he signed the successive versions of the covenant not to compete Curtis gave him something of value in exchange for his signing. That something of value, the expectation of continued employment, was not worthless merely because it was uncertain; and we know that it was not illusory.

Some states have, it is true, refused to regard continued employment as consideration when, as in this case, the covenant was signed after the employee began work. Annot., "Sufficiency of Consideration for Employee's Covenant Not to Compete, Entered Into After Inception of Employment," 51 A.L.R.3d 825, 828 (1973 and 1993 Supp.). That is plainly the right result in a case like *Robinson,* where the employee's contract already entitled her to continued employment so that there was indeed no fresh consideration for the covenant. In the case of employment at will, however, continued employment for a substantial period is good consideration for the covenant and the only effect of drawing a distinction between pre-hire and post-hire covenants would be to induce employers whose employees had signed such a covenant after they started working to fire those employees and rehire them the following day with a fresh covenant not to compete. *McRand, Inc. v. Van Beelen, supra,* 486 N.E.2d at 1314.

So the covenant not to compete that Suess signed was enforceable under Illinois law provided that Curtis had a protectable interest. Certainly it had an interest. Suess had during his employment by Curtis undoubtedly learned a lot about the particular needs and circumstances of the firm's customers in his sales area. The acquisition of this information enabled Suess to become an effective salesman for Curtis and he was compensated for his sales successes in the commissions he received. By compensating Suess, Curtis invested in Suess's human capital (earning capacity), making him a more valuable employee to Curtis, whose "goodwill"—the value of a business not reflected in its countable assets—was augmented thereby. The two-year covenant not to compete can be interpreted as a device for making sure that Suess would not appropriate Curtis's entire investment in his human capital by selling the information he acquired to a competitor. See Gary S. Becker, *Human Capital: A Theoretical and Empirical Analysis, With Special Reference to Education* 45–57 (3d ed. 1993); Paul H. Rubin & Peter Shedd, "Human Capital and Covenants Not to Compete," 10 *J. Legal Stud.* 93, 96–97 (1981).

But Illinois, unlike Delaware, limits the interests that a covenant not to compete may protect to trade secrets, confidential information, and relations with "near-permanent" customers of the employer. E.g., *Label Printers v. Pflug, supra; Springfield Rare Coin Galleries, Inc. v. Mileham, supra; A.J. Dralle, Inc. v. Air Technologies, Inc.,* 255 Ill.App.3d 982, 194 Ill.Dec. 353, 561, 627 N.E.2d 690, 698 (1994); *Office Mates 5, North Shore, Inc. v. Hazen,* 234 Ill.App.3d 557, 175 Ill.Dec. 58, 60–61, 599 N.E.2d 1072, 1084–85 (1992); *Shapiro v. Regent Printing Co., supra,* 549 N.E.2d at 796. A customer list can be a trade secret, but only if serious efforts are made to keep it secret. *Label Printers v. Pflug, supra,* 564 N.E.2d at 1389–90. Similarly, confidential information, to be protectable, must be—confidential. *Springfield Rare Coin Galleries, Inc. v. Mileham, supra,* 620 N.E.2d at 485–88; *Office Mates 5, North Shore, Inc. v. Hazen, supra,* 599 N.E.2d at 1084–85. The reasons for these conditions are twofold. If the firm claiming a protectable interest did not think enough of it to expend resources on trying to prevent lawful appropriation of it, this is evidence that it is not an especially valuable interest, one the firm had incurred *substantial* ex-

pense to acquire or create, and that the firm may be trying to dampen competition rather than to protect a legitimate investment. *Rockwell Graphic Systems, Inc. v. DEV Industries, Inc.,* 925 F.2d 174, 179 (7th Cir. 1991). And if the information in which rights are sought is not in fact secret, chances are that the defendant (or in this case the defendant's new employer) would soon have obtained it lawfully, so that the plaintiff hasn't really been much harmed by the employee's defection and again an inference of possible anticompetitive purposes arises. *Id.* at 179; Rubin & Shedd, *supra,* at 106.

It is not however a good argument that the information Suess obtained about Curtis's customers was public because any competitor of Curtis could obtain it simply by asking the customers. Customers often conceal their real needs, preferences, and above all reservation prices in order to induce better terms from sellers. Suess presumably had sniffed out those true needs, preferences, and reservation prices. But Judge Mihm found, not clearly erroneously, that Curtis had no trade secrets in the information that Suess had obtained about its customers, and made no effort to keep such information secret. This finding defeats Curtis's effort to show a protectable interest on either of these grounds and leaves relations with near-permanent customers. The Illinois cases distinguish between sellers of services, especially professional services such as accounting and consulting, and sellers of ordinary goods. In the former class, where the quality of the seller's service is difficult to determine by simple inspection, customers come to repose trust in a particular seller, and that trust is a valuable business asset, created by years of careful management, that the employee is not allowed to take away with him. *Cockerill v. Wilson,* 51 Ill.2d 179, 281 N.E.2d 648, 651 (1972); *Canfield v. Spear,* 44 Ill.2d 49, 254 N.E.2d 433, 434 (1969). In the latter class, involving the sale of goods, the element of trust is attenuated, particularly where as in this case the good is a simple and common one sold under competitive conditions. In these cases Illinois law does not permit the seller to claim a protectable interest in his relations with his customers. See *A.J. Dralle, Inc. v. Air Technologies, Inc., supra,*

627 N.E.2d at 698; *Springfield Rare Coin Galleries, Inc. v. Mileham, supra,* 620 N.E.2d at 488; and, with specific reference to the printing market, *Label Printers v. Pflug, supra,* 564 N.E.2d at 1388, and *Reinhardt Printing Co. v. Feld,* 142 Ill.App.3d 9, 96 Ill.Dec. 97, 102–03, 490 N.E.2d 1302, 1307–08 (1986); see also *Shapiro v. Regent Printing Co., supra.* For here current price and quality, rather than a past investment in meeting customers' needs, are the decisive factors in the continued success of the firm, and they of course are not appropriated by the departing employee.

■ We believe therefore that the district judge was right, although for the wrong reason, in concluding that Curtis had not made a case for a preliminary injunction—under Illinois law. Under Delaware law, it had; but we agree with the judge that an Illinois court would not apply Delaware law to this case. This is not however because the Delaware law of covenants not to compete is repugnant to the public policy of Illinois by virtue of not insisting on a protectable interest. The difference between "protectable" and "legitimate" interest is we think too slight to induce an Illinois court to take the rather drastic step of invalidating a consensual choice of law clause. It can hardly shock the Illinois judicial conscience to enforce a covenant not to compete that has as its objective the protection of a *legitimate* interest if not one quite so strong as Illinois would insist upon in adjudicating disputes under its own law. Cf. *Fister/Warren v. Basins, Inc., supra,* 160 Ill.Dec. at 861–62, 578 N.E.2d at 40–41.

An Illinois court would not honor the parties' designation of Delaware law for a different reason: there is insufficient connection between the contract and the State of Delaware. *Id.* at 40; *Hartford v. Burns Int'l Security Services, Inc., supra,* 526 N.E.2d at 464; *Potomac Leasing Co. v. Chuck's Pub, Inc.,* 156 Ill.App.3d 755, 109 Ill.Dec. 90–93, 509 N.E.2d 751, 754 (1987). Businesses incorporate in Delaware in order to take advantage of that state's corporation law, and its judicial expertise concerning corporate governance, rather than to conduct business there. Curtis's headquarters are in Georgia, and it has no offices or operations in Dela-

ware. Suess of course has no contacts with Delaware. Curtis and Suess are operating in Illinois, so Illinois has an interest in applying its law to their relations. If the choice of law provision in the covenant not to compete had designated Georgia law we assume the Illinois courts would defer to that designation, recognizing that Georgia has as much interest in regulating the out of state operations of "its" firm as Illinois does in protecting its citizen, Mr. Suess. But that is not the case here.

We conclude that an Illinois court (whose surrogate we are in this diversity case) would apply the Illinois law of covenants not to compete and would therefore deny the motion for a preliminary injunction both against Suess and against ABF; for remember that Curtis's claim against the latter is entirely derivative from its claim against the former.

AFFIRMED.