In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 05-2149 & 05-4287

TAX TRACK SYSTEMS CORPORATION,

*Plaintiff-Appellant,*

*v.*

NEW INVESTOR WORLD, INCORPORATED,

*Defendant-Appellee.*

---

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6217—**Robert W. Gettleman**, *Judge.*

---

ARGUED MAY 5, 2006—DECIDED FEBRUARY 27, 2007

---

Before KANNE, WOOD, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* This diversity suit, governed by
Illinois law, pits two insurance brokerages against each
other. Tax Track Systems Corporation ("Tax Track") sued
New Investor World, Inc. ("NIW"), for, among other things,
breaching a confidentiality agreement. The district court
concluded that Illinois law did not protect Tax Track's
information because Tax Track made insufficient efforts
to keep that information confidential. The court granted
summary judgment for NIW and also awarded NIW
attorneys' fees and costs under the parties' agreement.

On appeal, Tax Track argues that whether it took
reasonable measures to keep its information confidential

(which is what Illinois requires before it will enforce a confidentiality agreement) is a factual determination that should have gone to a jury. It also argues that the district court erred by awarding NIW attorneys' fees and costs. The agreement provided for recovery of attorneys' fees by the "substantially prevailing party," and Tax Track argues NIW did not "substantially prevail" because it lost on its counterclaims.

We affirm. Typically, whether a party took reasonable steps to protect its confidential information is a fact question for the jury, but here no reasonable jury could conclude that Tax Track's meager and inconsistent protective measures were sufficient to protect its information. Moreover, the district court did not err in awarding NIW attorneys' fees and costs as the substantially prevailing party under the parties' agreement.

## I.  Background

Tax Track markets and sells insurance products. One of its products is called "premium financed life insurance" or "leveraged life insurance." Leveraged life insurance is for the very wealthy who need policies of such great value that the premiums are unusually high. The gist of leveraged life insurance is that the insured finances the premiums with a loan on which he pays only the interest, or in some cases nothing at all, and the balance of the loan is paid out of the death benefit after the insured dies.

Leveraged life insurance is not a new idea, but Tax Track and its owner, William Gray, who has twenty years of experience in the insurance industry, claim to have put a unique spin on the idea by using policy riders to defer payments on principal and interest for the life of the loan. In other words, the insured pays nothing for his policy; the entire cost of the policy is paid by the death

benefit. Tax Track pitched its idea to potential clients—those who would buy the policies, the insurance companies who would underwrite them, and the banks who would finance them—through a memo called the "Gift Compression Techniques memo" or "GCT memo," as Tax Track calls it. Gray kept the memo exclusively on his password-protected computer. However, he gave copies of the GCT memo to 600 or 700 people over the course of about five years; some signed confidentiality agreements, some did not. Gray did not keep track of everyone he sent the GCT memo to and could not identify them all. The memos were not marked "confidential."

In December 2000 Tax Track teamed up with NIW to market and sell leveraged life insurance. NIW's president, Grace Krueger, was aware of leveraged life insurance before joining forces with Tax Track, but NIW had not marketed the product. The parties signed a "Confidentiality, Intellectual Property and Non-Disclosure Agreement," which bound them for a term of three years to keep confidential all "Licensed Material," as defined by the agreement, and all other "confidential information," which the agreement did not define. Nine specific items were listed as Licensed Material under the agreement: one software program; two legal opinion letters; three memoranda, including one called the "Leverage Overview"; and three process methodologies (like how to sell leveraged life, how to process orders, how to respond to frequently asked questions, and so on). Licensed Material also included "any additional material developed over the course of this Agreement to facilitate the concept of Leveraged Life Insurance and the Licensed Material." The agreement had a three-year term, but it also contemplated the possibility of early termination. The agreement provided that "[t]he obligations of either party regarding the treatment of Confidential Information and Licensed Material shall survive any termination of the [agreement]."

NIW terminated the agreement after only three months, claiming Tax Track had not lived up to its end of the bargain. NIW then began to compete with Tax Track in the leveraged life insurance market, selling a product similar to Tax Track's. NIW also developed what it called an "Executive Summary" of its leveraged life insurance product that bears striking resemblance to Tax Track's GCT memo.

Tax Track sued NIW for breach of the confidentiality agreement, tortious interference with prospective economic advantage, common law misappropriation, and quantum meruit. NIW filed compulsory counterclaims alleging breach of contract and fraudulent misrepresentation. Both parties moved for summary judgment. The district court granted both motions; Tax Track was defeated on its four claims and NIW on its two.

The agreement contemplated an award of attorneys' fees and costs for the "substantially prevailing [p]arty" "[i]n any suit, proceeding or action to enforce any term, condition or covenant of this Agreement or to procure . . . determination of the rights of any of the Parties." Although NIW lost on its counterclaims, which by NIW's estimates were worth over $1.3 million, the district court awarded NIW costs and attorneys' fees. The court concluded that NIW had defeated Tax Track's claims and that NIW's counterclaims were "clearly defensive"—they were compulsory and would have been waived if not brought in this suit. FED. R. CIV. P. 13(a). Accordingly, the court held that NIW was the substantially prevailing party.

## II. Discussion

Tax Track alone has appealed—NIW is apparently satisfied with the outcomes below, including its own defeat on its counterclaims. Tax Track raises two issues. First,

Tax Track argues summary judgment was improper on its claim for breach of the confidentiality agreement because the issue of whether it took reasonable steps to keep its information confidential is a question of fact for a jury. Second, Tax Track claims NIW is not the substantially prevailing party and should not have been awarded attorneys' fees. By Tax Track's lights, the litigation below was a draw since both sides lost on their affirmative claims.

## A. Summary Judgment on the Confidentiality Agreement

We review summary judgments de novo, taking all the facts and their reasonable inferences in the light most favorable to the nonmovant, Tax Track in this case. *Valentine v. City of Chi.*, 452 F.3d 670, 677 (7th Cir. 2006). We affirm summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Accordingly, assuming Tax Track's version of events is true, summary judgment is appropriate if NIW is nevertheless entitled to judgment as a matter of law.

Confidentiality agreements like the one in this case are restrictive covenants and under Illinois law are reviewed with a suspicious eye. *Springfield Rare Coin Galleries, Inc. v. Mileham*, 620 N.E.2d 479, 485 (Ill. App. Ct. 1991); *Label Printers v. Pflug*, 564 N.E.2d 1382, 1387 (Ill. App. Ct. 1991). An Illinois court, in whose place we sit, will enforce such agreements only when the information sought to be protected is actually confidential and reasonable efforts were made to keep it confidential. *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 947 (7th Cir. 1994);

*N. Am. Paper Co. v. Unterberger*, 526 N.E.2d 621, 624-25 (Ill. App. Ct. 1988). The information need not always be kept under lock and key only for the viewing eyes of company officials with the highest security clearance. *See Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.*, 925 F.2d 174, 180 (7th Cir. 1991) (noting "perfect security is not optimum security" given the costs involved). Some disclosure of confidential information is often necessary to profitably exploit the information. *Rockwell Graphic Sys.*, 925 F.2d at 177. Tax Track need not show its information rises to the level of a trade secret, but it must nevertheless establish that it engaged in reasonable steps to keep the information confidential. *Tower Oil & Tech. Co. v. Buckley*, 425 N.E.2d 1060, 1066 (Ill. App. Ct. 1981). If the party seeking to protect its information "did not think enough of it to expend resources on trying to prevent lawful appropriation of it, this is evidence that it is not an especially valuable interest." *Curtis 1000, Inc.*, 24 F.3d at 947.

The question here is how much effort to keep information confidential is enough to be considered reasonable? Courts evaluate this question on a case-by-case basis, considering the efforts taken and the costs, benefits, and practicalities of the circumstances. *See, e.g.*, *id.* at 947-48; *Rockwell Graphic Sys.*, 925 F.2d at 179. As we have noted, *some* disclosure is usually necessary. Typically, what measures are reasonable in a given case is an issue for a jury. *Rockwell Graphic Sys.*, 925 F.2d at 179-80. In some circumstances, however, it may be readily apparent that reasonable measures simply were not taken. *Id.* at 179.

It is not entirely clear what exactly Tax Track is trying to protect. At times, Tax Track appears to claim the *concept* of leveraged life insurance is protected, but that cannot be so. The evidence overwhelmingly demonstrates

(and Tax Track does not contest) that leveraged life insurance is widely known and has been around for decades. Tax Track also appears to claim that its business relationships were confidential, but it has come forward with nothing to substantiate that. Tax Track also suggests that its specific method of selling leveraged life insurance—by using term policy riders—is confidential. But those policies and their riders are issued by the insurance companies who underwrite them, and the documents are generally required to be on file as a public record with the states where the insurance is sold.

Based on the evidence Tax Track has produced, the only material even conceivably falling within the confidentiality agreement is the GCT memo. According to Tax Track, the GCT memo is referred to in the agreement as "the Leverage Overview memo" and is part of the Licensed Material the parties specifically agreed to keep confidential. Although NIW contests this, we assume (as we must) that Tax Track's assertion is true. Regarding the efforts Tax Track made to protect the GCT memo, both sides claim support from this court's decision in *Rockwell Graphic Systems*.

*Rockwell Graphic Systems*, a trade secrets case, involved "piece part" drawings, which were detailed drawings of parts for Rockwell machines that indicated materials used, dimensions, tolerances, and methods of manufacture. *Id.* at 175. Rockwell stamped the drawings "Confidential" and kept them in a vault with limited access. The drawings could be used by Rockwell's 200 engineers, who had to sign them out and replace them after use. All photocopies had to be destroyed. *Id.* at 177. Rockwell also gave some third-party manufacturers copies of the drawings because it sometimes hired them to build the parts. Everyone who had access to a drawing signed a confidentiality agreement. *Id.* Noting that disclosure of confidential information is often necessary to profit off the information,

*id.* at 177, we held in *Rockwell Graphic Systems* that the mere fact the drawings were shared with third-party manufacturers did not necessarily destroy the confidential nature of the documents as a matter of law. *Id.* at 180. We reversed summary judgment and remanded the case for a jury to decide whether Rockwell's confidentiality efforts were reasonable. *Id.* at 180.

Tax Track maintains that it, like Rockwell, took reasonable measures to protect its GCT memo, strategically disclosing it to outsiders only to profit. But Tax Track behaved nothing like Rockwell. Tax Track concedes that Gray distributed the GCT memo to 600-700 people and sought confidentiality agreements from only 190 of them at most, and that Gray cannot identify the people he gave the memo to. The GCT memo was not stamped "Confidential." Tax Track emphasizes that the memo was stored exclusively on Gray's password-protected computer, but that effort was entirely undermined by Gray's widespread nonconfidential disclosure of the memo to hundreds of outsiders. No reasonable jury could find Tax Track took reasonable efforts to keep its GCT memo confidential so as to warrant protection under the restrictive covenant.

## B.  Attorneys' Fees

The agreement provides that the "substantially prevailing" party "[i]n any suit, proceeding or action to enforce any term, condition or covenant of this Agreement or to procure . . . determination of the rights of any of the Parties" shall be awarded attorneys' fees and costs. The district court determined that although NIW lost its counterclaims, it was the substantially prevailing party. Tax Track disagrees. It sees the case as a tie, both sides having won and lost equally.

The standard of review for the award of attorneys' fees has been the subject of some debate in this case. We

review the meaning of the contract term "substantially prevailing" de novo. *Platinum Tech., Inc. v. Fed. Ins. Co.*, 282 F.3d 927, 931 (7th Cir. 2002). The more difficult question is how we review the district court's award of attorneys' fees. Under Illinois law, whether to award attorneys' fees is usually a matter entrusted to the discretion of the trial court. *Raffel v. Medallion Kitchens of Minn., Inc.*, 139 F.3d 1142, 1147 (7th Cir. 1998). If the agreement *permitted* an award of attorneys' fees to the substantially prevailing party, we would review for an abuse of discretion. But the agreement at issue here *mandates* attorneys' fees *if* the district court finds that one party substantially prevailed.

Accordingly, whether NIW substantially prevailed within the meaning of the contract is a mixed question of fact and law, or stated differently, an application of the legal standard ("substantially prevailing") to the facts. In a diversity suit when the judge acts as a fact finder (as he does in deciding whether a party substantially prevailed), the federal standard of review applies. *Mayer v. Gary Partners & Co., Ltd.*, 29 F.3d 330, 334 (7th Cir. 1994) (noting that "[w]hen federal judges act as triers of fact in diversity cases, all questions concerning the standard of review are governed by federal law"). So we will review the district court's determination that NIW was the substantially prevailing party for clear error. *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 307 (7th Cir. 2002).

As to the meaning of the contractual term "substantially prevailing party," we have found no Illinois contract cases dealing with the phrase; more often litigated is the simpler phrase "prevailing party." Tax Track suggests that the standard for "substantially prevailing party" is higher than the standard for a "prevailing party." As it turns out, however, Illinois case law incorporates a substantiality requirement into its interpretation of contrac-

tual attorneys' fees provisions awarding fees to the prevailing party. In this context, a "prevailing party" is one who "is successful on any *significant* issue in the action and achieves some benefit in bringing suit, when it receives a judgment in its favor, or when it achieves an affirmative recovery." *Med + Plus Neck & Back Pain Ctr., S.C. v. Noffsinger*, 726 N.E.2d 687, 694 (Ill. App. Ct. 2000) (emphasis added); *Raffel*, 139 F.3d at 1147; *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985) (interpreting "prevailing party" language used in contract governed by Illinois law by comparing it to use of "prevailing party" in the Federal Rules of Civil Procedure fee-shifting rule).

Because Illinois interprets "prevailing party" as one who prevails in a "significant" respect in the litigation, we see little distinction in meaning between a "prevailing party" and a "substantially prevailing" one. Even assuming the standard for a "substantially prevailing party" status is incrementally steeper than that for "prevailing party" status, the district court did not clearly err in concluding that NIW substantially prevailed.

NIW defeated all of Tax Track's claims and received a judgment in its favor dismissing the entire action against it. NIW lost on its counterclaims. By Tax Track's reasoning, a judgment in one's favor is not enough for "substantially prevailing party" status if another judgment—on a counterclaim, for example—is adverse. Not so. A party may win some and lose some, but it may win more than it loses. A "prevailing party" need not win on all claims, *see, e.g.*, *Powers v. Rockford Stop-N-Go, Inc.*, 761 N.E.2d 237, 240 (Ill. App. Ct. 2001), nor must a "substantially" prevailing party—to prevail "substantially" does not mean "totally."

Here, the district court characterized NIW's counterclaims as "defensive" in that NIW brought its counter-

claims only because they were compulsory. The district court then held that NIW's counterclaims were "not sufficiently weighty, time-consuming or complex to warrant denial of fees to defendant for prevailing on all of plaintiff's claims." Tax Track notes on appeal that NIW's counterclaims were allegedly worth upwards of $1.3 million and argues that a loss on a counterclaim of this size must defeat prevailing party status. We disagree. NIW prevailed completely—not just substantially—on *all* of Tax Tracks claims against it, and lost only on its compulsory counterclaims. Tax Track's claims against NIW predominated in the litigation, and in securing their dismissal NIW won more than it lost. The district court's determination that NIW was the substantially prevailing party entitled to an award of attorneys' fees was not clearly erroneous.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*