In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2939

STEVEN A. LAUTH,

*Plaintiff-Appellant*,

*v.*

COVANCE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:14-cv-00136-WTL-TAB — **William T. Lawrence**, *Judge.*

ARGUED FEBRUARY 7, 2017 — DECIDED JULY 13, 2017

Before BAUER, POSNER, and SYKES, *Circuit Judges*.

BAUER, *Circuit Judge*. Steven Lauth was terminated from his
position at Covance Central Laboratories, Inc. on October 25,
2012. He sued Covance, raising claims of age discrimination
and retaliation. The district court granted summary judgment
in favor of Covance. The court also awarded certain costs to
Covance. Lauth appeals from both orders.

## I.  BACKGROUND

The facts that follow are those established by the summary judgment record in the district court, as viewed in the light most favorable to Lauth. *See Whitaker v. Wis. Dep't of Health Servs.*, 849 F.3d 681, 682 (7th Cir. 2017).

Lauth began working at Covance in 2006 at the age of 54. He started as a second shift supervisor in the kit production department. From the time Lauth started in 2006 through April 2012, Donald Snyder was his direct supervisor.

After the end of each year, and sometimes at mid-year, Lauth received a performance review called a Performance Management Document (PMD). Snyder, as Lauth's supervisor, wrote his first review in 2006 and issued Lauth an overall rating of "Meets Expectations." He praised Lauth for maximizing his department's output and for his "diligence in getting his staff cross trained as much as possible." Snyder also commented on Lauth's communication style, noting that he "need[s] to tailor or soften somewhat his approach, to that of his workforce." He stated that Lauth could do this by "using a little more compassion and maybe even incorporating ways to relax the 2nd shift." Finally, Snyder noted that Lauth needed "to realize and make any necessary adjustments in his style, in order to match the environment of the 2nd shift workforce, without comprimising [sic] his beliefs and standards."

In Lauth's 2007 PMD, Snyder again gave him a "Meets Expectations" overall rating. Snyder praised Lauth's diligence, work ethic, and "all business approach" to his job. However, the PMD also noted improvements that Lauth needed to make in his communication style. Snyder noted that several staff

members had expressed their discontent with Lauth's supervision and communication style; Snyder stated that Lauth "will need, and has begun, to tailor or soften somewhat his approach to that of his workforce." Snyder also commented that Lauth "is at times unreceptive to take help and/or suggestions from others, choosing to do it his way. This is often not received well with his peers."

Lauth received an overall rating of "Meets Expectations" again in 2008. Snyder commented that Lauth was able to accomplish his department's output with the least experienced and fewest number of employees. He also noted that morale "no longer seems to be an issue within [Lauth's] shift, regarding his supervision and communication style." However, Snyder also reiterated his concerns that Lauth "appears unreceptive to take help and/or suggestions from others" and stated that Lauth "must improve … [his] working relationship with his fellow shift supervisors." Because Lauth's style was often not well-received by his peers, Snyder stated that "I actually wonder whether or not if [Lauth] is the right fit for our team." In this PMD, Snyder warned that if Lauth's "temperament and communication practices" did not change, "this may impact his rating for next year, or potentially run the risk of [Snyder] needing to replace him with someone who works better with the others in the room, across all facets."

In 2009, Lauth again received a rating of "Meets Expectations." In 2010, however, he received a rating of "Exceeds Expectations." Snyder praised Lauth for leading all shift's in total output, noting that he played a "huge role in [kit production]'s overall departmental success in 2010." He also noted that Lauth had done a good job avoiding conflict with other

staff. Finally, however, Snyder commented that Lauth is "very strong willed and an independent thinker," which "[a]t times … can be confused or perceived to be detrimental to the cause."

On July 11, 2011, Lauth received a mid-year PMD from Snyder, which again complimented Lauth for meeting his unit's output goals. However, Snyder also provided detailed comments regarding issues with Lauth's communication methods and his unwillingness to be a "team player." Specifically, Snyder mentioned emails that Lauth had sent during the first half of 2011, in which Lauth addressed noise issues in his department. Snyder noted that "[a]lthough I know [Lauth's] intent was fine, the manner [in] which the emails were written and perceived, [was] counterproductive." Snyder also noted a specific instance in which Lauth challenged one of Snyder's directives and expressed an inability to complete an assigned task. In the "Team Player" category, Snyder stated that "[Lauth's] 'my way' approach is no longer acceptable to me. This needs to change and improve this year. I want to see an obvious change in [Lauth] relating to how he works with all [kit production] leadership, otherwise, [Lauth] risks being given a Needs Improvement rating at year end." Shortly after Snyder issued the mid-year PMD, he and Lauth met in person to discuss it. During that meeting, Snyder asked Lauth when he planned to retire.

Covance had a system called AlertLine, through which employees could submit workplace complaints. On August 28, 2011, Lauth submitted a complaint through AlertLine regarding Aaron Ellsworth, another employee in the kit production department. Between 2006 and 2011, Lauth had various verbal

complaints to Snyder about Ellsworth, alleging that he bullied and intimidated Lauth and other employees.

In his AlertLine complaint, Lauth complained of Ellsworth's harassment, but specifically noted that it did not relate "to unlawful harassment … because of race, color, religion, national origin, gender, age, disability, veteran's status or any other characteristic protected by law[.]" Lauth cited examples of "behavior that could be labeled 'bullying' and 'intimidation' contrary to Covance's Principle of 'Respect for the individual.'" Additionally, Lauth stated the following in reference to his 2011 mid-year PMD:

> Due to the statements made by my manager in my review, I responded in an email specifically to my manager's comments in a much more timid manner where I would normally have felt comfortable challenging some of his assertions, because I felt that I was being threatened—not truly because of my work performance being inadequate, but more due to the environment that exists in our department as a result of [Ellsworth]'s continued exhibits of control, intimidation and bullying. It was very clear that [Snyder]'s comments of being a team player were meant to communicate that I needed to 'get along better' with [Ellsworth]. … Although this abusive environment that [Ellsworth] has created exists and has been brought to [Snyder]'s attention on many occasions by myself and others, he has allowed the situation to continue.

Covance referred this complaint to Human Resources Generalist Gary Grubb for investigation. Grubb completed the investigation in late November or early December 2011. He found that Ellsworth had behaved inappropriately on several occasions, raising his voice and making inappropriate comments. Grubb also found that Snyder had not mistreated Lauth, and identified several areas in which Lauth could improve his workplace communications. He recommended to Snyder that Ellsworth be placed on a Performance Improvement Plan (PIP).

On December 2, 2011, Grubb met with Lauth to discuss the findings of his investigation and inform him that Ellsworth would be counseled on his behavior. On December 5, 2011, Lauth sent Grubb an email stating that the proposed discipline was "totally unacceptable" and expressing his belief that the investigation had not gone far enough. On January 10, 2012, Grubb's findings and proposed corrective actions were posted as follow-up comments to Lauth's AlertLine complaint. On January 11, 2012, Snyder placed Ellsworth on a PIP, which he satisfactorily completed on May 18, 2012.

On January 25, 2012, Lauth filed a charge of discrimination with the Equal Employment Opportunity Commission. He claimed that Covance discriminated against him on the basis of his age, citing Snyder's inquiry as to when he planned to retire. Lauth also alleged that Covance retaliated against him for making complaints about Ellsworth.

The same day Lauth filed the EEOC charge, Snyder met with him to discuss the outcome of his AlertLine complaint. Snyder explained that Ellsworth had begun counseling, that

they had given Ellsworth action items to work on, and that they were monitoring him. Snyder also reiterated his concerns with Lauth's communication style and reminded him that the issues discussed at the mid-year review still applied. Specifically, Snyder told Lauth that he was expected to be cordial to everyone, including Ellsworth. A few hours later, Lauth responded to Snyder in an email, stating that he was always cordial to everyone and that it was Ellsworth who needed to correct his behavior. Snyder replied by email, again explaining that Ellsworth was being counseled. Snyder also stated that Lauth would be subject to "Progressive Corrective Action" if he initiated any "further non-professional, non-cordial conduct, [or] non-cooperative interactions" with Ellsworth.

On January 20, 2012, Snyder completed Lauth's 2011 year-end PMD. Snyder gave Lauth an overall rating of "Meets Expectations," but again noted communication problems and stated that Lauth had not done enough to change Snyder's assessment of these issues. He wrote that he "expect[s] to see an obvious change in [Lauth] regarding how he works with and communicates with all [kit production department] employees."

On April 30, 2012, the EEOC issued Lauth a Dismissal and Notice of Rights letter regarding his January 25, 2012, charge of discrimination. The deadline to file suit with respect to that charge was July 30, 2012, which passed without Lauth taking action.

Imelda Marsh assisted Snyder in the supervision of the kit production department from April 2012 to July 2012, at which time Snyder transitioned out of his role and was replaced by

Christine Walters. On July 10, 2012, Marsh sent Grubb an email regarding an interaction she witnessed between Lauth and Walters. Marsh stated that Lauth "was argumentative and insubordinate in his approach with [Walters]." She explained that she planned to meet with Lauth and give him a PIP, but also stated that she wanted approval to terminate his employment.

Instead of terminating Lauth or giving him a PIP, Marsh issued him a written warning on July 20, 2012. The warning stated that it was "due to repeated inappropriate and unprofessional communication." It cited Lauth's inability to receive constructive feedback and "establish stable, manageable working relationships with peers." The warning concluded that "[a]ny further incidents involving inappropriate and unprofessional behavior/communication in maintaining a positive non-confrontational relationship with others will result in additional progressive corrective action, including termination."

Marsh gave Lauth the written warning during a face-to-face meeting, which Lauth audio-recorded. At one point during the meeting, Lauth asked if he could prepare a written response to the warning. Marsh responded by saying, "… this is not going to work for me. … If I have to feel like I'm on trial with you every time I have a conversation with you, if I feel like you're putting together a case, this is not the right place for you."

Walters replaced Snyder as the supervising manager of the kit production department in July 2012. Before he left the position, Snyder completed a mid-year PMD and a PIP for Lauth. Walters delivered these documents to Lauth on

August 8, 2012. The PMD indicated that Lauth was "tracking towards a 'Needs Improvement' year end rating." It stated that Lauth "refused to change his communication practices, despite being informed via PMD meetings numerous times." The PIP stated that it had been issued "due to on-going concerns regarding [Lauth]'s performance and/or behavior." It cited examples of Lauth's problematic behavior that had occurred since his 2011 mid-year PMD. The PIP contained "action steps" that Lauth was expected to complete within ninety days, including providing appropriate and timely communications, participating in leadership meetings, and engaging in a more "proactive, outreaching approach" to work-related concerns.

Lauth audio-recorded the meeting in which Walters provided these documents. When Walters asked him what he thought of the documents, Lauth responded, "[w]ell, to me, it's all retaliatory. … There was no input, so this PIP, to me, is frivolous, it's a mistake."

Lauth went on vacation from September 1, 2012, through September 17, 2012. Lauth filed a second charge of discrimination with the EEOC on September 17, 2012. Again, he alleged age discrimination, based on Snyder's retirement question, and retaliation, based on the various reviews and warnings he received since his first charge was filed and dismissed.

While Lauth was on vacation, Ellsworth had an argument on the production floor with Roger Carter, another kit production employee. Ellsworth reported the incident to Walters, who reported it to Human Resources and spoke with Ellsworth's shift supervisor about the incident. When he returned to work

on September 18, 2012, Lauth had a meeting with Walters to discuss his progress on his PIP. Lauth had learned about the incident between Ellsworth and Carter and mentioned it to Walters at their meeting. Walters assured Lauth that she knew of the incident, had reported it to Human Resources, and was handling its resolution. Despite this response, Lauth proceeded to investigate the incident himself. Then, on September 21, 2012, Lauth sent an email to Grubb reporting the incident. Grubb responded on September 24, 2012, indicating that he was aware of the incident and that it was being handled by Walters and the first-shift supervisor.

On October 2, 2012, Walters held another PIP progress meeting with Lauth. In that meeting, she told Lauth that she would have liked him to trust her when she said that she was handling the Ellsworth incident and that she would have liked it if he had not investigated it himself. Lauth indicated that he had been trying to get Ellsworth's behavior corrected for six years and stated that he had to make a record of the incident for his own benefit. Walters said that she thought this behavior was inconsistent with his PIP. Lauth disagreed, saying that he did not think what he did was wrong or unprofessional. He also reiterated his belief that he should not have been placed on a PIP at all.

Between October 8 and October 17, 2012, Walters received complaints from four of Lauth's second-shift kit production employees. On October 8, 2012, Kathleen Kiemeyer told Walters that Lauth had been harassing her, and that he was unapproachable and intimidating. On October 9, 2012, Rhonda Taylor, a new employee at the time, described Lauth as intimidating and requested that she be transferred out of his

department. On October 12, 2012, Cassandra Wilson told Walters that Lauth had written her up for an error she made while on her third day of training, which she believed was unfair. She also described Lauth as intimidating and said that he made her uncomfortable because he would stand near her and watch her work. Finally, on October 17, 2012, Tammy Wright, another kit production employee, complained that she was not receiving adequate training.

On October 18, 2012, Walters and Heidi Sturgeon, a Human Resources employee, met with Lauth to discuss these complaints. Lauth stated that he was unhappy with how these complaints were addressed because he could not investigate them himself. He also requested that Walters interview other employees on his shift to see whether they agreed with these assessments of his demeanor.

On October 22 and 23, 2012, Walters interviewed six such employees. Five of them reported similar types of behavior from Lauth. They described him as unprofessional, condescending, and non-communicative. The sixth employee said she did not have any problems with Lauth, but knew that others did.

After speaking with these employees, Walters met with Sturgeon and recommended that Covance terminate Lauth's employment, based on continued performance deficiencies in violation of the obligations of his PIP. Sturgeon and Covance's legal department agreed with the recommendation. On October 25, 2012, Walters and Sturgeon met with Lauth and terminated his employment.

Based on his September 2012 EEOC charge, Lauth filed this suit against Covance, alleging age discrimination and retaliation under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* Covance moved for summary judgment, arguing that Lauth had failed to establish a dispute of material fact as to Covance's motives for his termination. On June 14, 2016, the district court granted summary judgment on both claims in favor of Covance. Lauth timely appealed.

## II. DISCUSSION

We review a grant of summary judgment *de novo. Whitaker*, 849 F.3d at 684 (citation omitted). "Summary judgment is appropriate and the moving party is entitled to judgment as a matter of law 'where there is no genuine dispute as to any material fact.'" *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 891 (7th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

### A. Age Discrimination Claim

Lauth's first claim is that his termination constituted discrimination in violation of 29 U.S.C. § 623(a)(1). The parties agree that Lauth meets the threshold requirements to bring such a claim, in that he was discharged and was over the age of forty at the time. *See id.* §§ 623 and 631. Therefore, the only remaining question for purposes of summary judgment is whether there is a triable issue of fact as to whether Covance terminated Lauth because of his age.

We recently discarded the distinction between direct and indirect methods of proof in employment discrimination cases, and clarified that all evidence must be evaluated as a whole. *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765–66 (7th Cir. 2016).

Thus, the proper inquiry before us now is whether a reasonable jury could determine, based on all of the record evidence, that Lauth's age was the cause of his termination. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (After *Ortiz*, "the question remains: has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?"); *see also Ripberger v. Corizon, Inc.*, 773 F.3d 871, 880 (7th Cir. 2014) (ADEA claim requires showing that age was but-for cause of discharge).

Lauth does not cite any specific examples of conduct or statements by any of his superiors that could raise the inference of a discriminatory motive, in and of themselves. Instead, Lauth argues that circumstantial evidence shows that his age, rather than any issues with his performance, was the cause of his termination. He contends that he performed his job satisfactorily throughout his employment, and that Ellsworth was younger, similarly situated, and treated more favorably. The record, however, belies both contentions.

First, it is clear that, at the time of his termination, Lauth's supervisors did not believe he was performing his job adequately. Lauth's performance reviews demonstrate that from the time he started at Covance in 2006, his supervisors found his demeanor and communication style problematic. Lauth makes much of the fact that he received a "Meets Expectations" rating, or better, on all of his year-end PMDs. In each of those PMDs, however, Lauth's communication was described as an issue that he needed to remedy. In Lauth's 2011 mid-year and year-end PMDs, Snyder wrote that Lauth's management approach was no longer acceptable and that he needed to make obvious improvements in his interactions with other staff and

leadership. This was followed by Marsh's written warning in July 2012, which was prompted by his "argumentative and insubordinate" discussion with Walters. Lauth received another negative mid-year PMD in 2012, in addition to a PIP, which was due to his "repeated inappropriate and unprofessional feedback." Despite these indications that his conduct was unacceptable, Lauth then took it upon himself to investigate the incident between Ellsworth and Carter, even after Walters told him she was handling it. Walters and Grubb both told Lauth this was not appropriate behavior. Finally, October 2012 brought the string of complaints from Lauth's shift employees. That history clearly demonstrates that Covance was not satisfied with Lauth's job performance.

Lauth's only arguments against that assessment are that his supervisors' concerns were misplaced and that those who complained about him did not have a basis to do so. Aside from his contentions that he did not have the communication issues that his supervisors saw as problematic, he offers no evidence to suggest that Covance's concerns were pretextual. However, Lauth's belief that he was performing his job adequately is not relevant to the question of whether Covance believed it had a legitimate, non-discriminatory basis to terminate him. *See Simpson v. Beaver Dam Cmty. Hosp., Inc.*, 780 F.3d 784, 795 (7th Cir. 2015) ("The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reasons it has offered to explain its decision.") (citation, quotation marks, and alterations omitted). Lauth does not cite any evidence that would allow for a reasonable inference that Covance did not have honest concerns about his communication style and behavior.

The record also defeats Lauth's argument that he and Ellsworth were similarly situated and that Ellsworth was treated more favorably. "[A]n employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their employer's treatment of them." *Hanners v. Trent*, 674 F.3d 683, 692–93 (7th Cir. 2012) (citation omitted). The parties agree that Lauth and Ellsworth had the same supervisor and were subject to the same behavior standards. The question, then, is whether they engaged in similar conduct that was treated differently.

On this score, Lauth falls woefully short. In each of Lauth's PMDs, from 2006 through 2012, his supervisor indicated that his communication style was problematic. There is no indication in the record that Ellsworth received similar feedback over such a long period of time. Moreover, Snyder, Grubb, Walters, and Marsh all testified that Ellsworth and Lauth responded differently to concerns about their behavior. Ellsworth demonstrated a willingness to correct the problems, while Lauth continuously pushed back on and disagreed with his supervisors' assessments. When Ellsworth's behavior did become a problem in 2011, he was placed on a PIP, which he completed to Covance's satisfaction in January 2012. Lauth was placed on a PIP in August 2012, but continued to exhibit behavior his supervisors found problematic. Walters also received numerous complaints from other employees regarding Lauth's behavior, while he was on the PIP. The record does not contain any examples of similar complaints regarding Ellsworth, aside from those Lauth made himself. Based on the discrepancies in

their problematic behavior, as well as their responses to requests to remedy that behavior, Lauth is unable to demonstrate that he and Ellsworth were similarly situated.

Lauth has failed to point to any evidence, other than his belief that Covance's assessments of his workplace behavior were mistaken, from which a jury could infer that Covance terminated him because of his age. Therefore, his age discrimination claim fails.

### B. Retaliation Claim

Lauth also claims that Covance disciplined and terminated him as retaliation for making his AlertLine complaint and for filing charges of discrimination with the EEOC. To survive summary judgment on his retaliation claim, Lauth must establish that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. *Hutt v. AbbVie Prods. LLC*, 757 F.3d 687, 693 (7th Cir. 2014) (citation omitted). As with the discrimination claim, we no longer recognize a distinction between direct or indirect evidence, and instead consider all of the record evidence to determine whether a causal link exists. *See Ortiz*, 834 F.3d at 765–66.

Lauth's EEOC charges were protected activities for purposes of his retaliation claim. *Smith*, 674 F.3d at 658. His AlertLine complaint, however, does not qualify as a protected activity because it explicitly disclaimed his age as the underlying basis for the harassment of which he complained. *Id.* ("General complaints … do not constitute protected activity under the ADEA because they do not include objections to

discrimination based on … age.”). Therefore, we will analyze his retaliation claim only as it relates to the filing of his EEOC charges.

Lauth's argument mistakenly assumes that his negative performance reviews, Marsh's written warning in 2012, and his PIP in 2012, all constitute adverse employment actions. These are not adverse actions, however, because Lauth cannot show that they resulted in a "quantitative or qualitative change in the terms or conditions of employment." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003), *overruled on other grounds by Ortiz*, 834 F.3d at 765; *see also Lagenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 799 (7th Cir. 2014) (negative performance reviews and PIPs are not adverse employment actions) (citations omitted). Lauth's discharge, on the other hand, clearly constitutes an adverse employment action.

Thus, the only question remaining is whether there is a causal link between Lauth's filing of the EEOC charges and his termination. Lauth fails to point to evidence, circumstantial or otherwise, from which a jury could infer such a link. Instead, as with his age discrimination claim, his argument is simply that because, in his view, his supervisors' concerns were mistaken or misplaced, the actions they took must have been retaliatory. He contends, for example, the complaints made against him in October 2012 all involved the proper exercise of his supervisory authority, and that Covance accepted the other employees' versions of events uncritically and without investigation. He also takes issue with the reasons he was given a written warning and placed on the PIP, and attempts to explain that he was justified in performing his own investigation of the incident between Ellsworth and Carter.

As we have already said, however, judgments regarding the fairness of a particular action or the accuracy of an employer's belief about an employee's job performance have no place in determining whether the employer acted based on an improper motive. *Simpson*, 780 F.3d at 795. Whether Lauth agreed with the basis for the repeated comments regarding his communication style, the basis for the warning and the PIP, or the substance of the employees' complaints is irrelevant to our inquiry. The only question that matters is whether Covance actually believed it had a legitimate basis to terminate Lauth. *See id.*

Lauth has not cited any evidence, other than his own speculation, that might indicate Covance used the litany of complaints and the documented history of his communication issues as a cover for its retaliatory motive. That speculation is insufficient to raise a question of fact, particularly in light of the Covance's consistent, longstanding, and progressive concerns about his behavior. *See Argyropolous v. City of Alton*, 539 F.3d 724, 737 (7th Cir. 2008) (mere speculation that employer lied to conceal true motives insufficient to withstand summary judgment).

### C. Bill of Costs

Lauth raises one final point, unrelated to the substance of his claims. On June 21, 2016, upon motion by Covance, the district court clerk entered a bill of costs, awarding $7,506.87 in costs to Covance. That amount included a $2,000 "deposition fee" from Dr. Malcolm Cohen, Covance's expert witness who was deposed at Lauth's request. The remainder was made up

of the cost of deposition transcripts Covance used for its motion for summary judgment.

Lauth did not challenge the bill of costs in the district court. On appeal, however, Lauth argues that the inclusion of the $2,000 was error because certain expert fees are not recoverable under 28 U.S.C. § 1920, which sets forth the taxable costs that may be entered in a bill of costs. We review an award of costs for an abuse of discretion. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 989 (7th Cir. 2001). "The award of costs is the type of discretionary ruling to which we give virtually complete deference." *Id.* (citation and quotation marks omitted).

Federal Rule of Civil Procedure 54(d)(1) provides that costs may be awarded to the prevailing party. The rule also sets forth the procedure for awarding and challenging such costs: "The clerk may tax costs on 14 days' notice. On motion served within the next 7 days, the court may review the clerk's action." Fed. R. Civ. P. 54(d)(1). We have held that a party who fails to challenge the imposition of costs within Rule 54's time limit has waived any objection to those costs. *See Cooper v. Eagle River Mem'l Hosp., Inc.*, 270 F.3d 456, 464 (7th Cir. 2001) (citing *Rowe v. Maremont Corp.*, 850 F.2d 1226, 1244 (7th Cir. 1988)).

Covance has not argued on appeal that Lauth waived his objection to the deposition fee, but we can invoke waiver *sua sponte*, *see United States v. Gimbel*, 782 F.2d 89, 91 n.5 (7th Cir. 2001), and we elect to do so here. The district court clerk entered the bill of costs on June 21, 2016. By failing to file a motion challenging any of those costs on or before June 28, 2016, Lauth waived such a challenge. *See Cooper*, 270 F.3d at

464. A finding of waiver is further supported by Lauth's undeveloped argument on appeal, the entirety of which consists of a single paragraph at the end of his opening brief. *See Campania Mgmt. Co. v. Rooks, Pitts, & Poust*, 290 F.3d 843, 852 n.6 (7th Cir. 2002) ("Perfunctory and undeveloped arguments are waived … ."). Lauth did not give the district court the opportunity to address the issue within the time prescribed by Rule 54, and we are, therefore, barred from reviewing it.

## III.  CONCLUSION

The district court's order granting Covance's motion for summary judgment and the entry of the bill of costs are affirmed.