NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued October 2, 2018
Decided October 12, 2018

*Before*

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 17-3610

| | |
|---|---|
| DARON SEYMOUR-REED, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of |
| | Illinois, Eastern Division. |
| *v.* | |
| | No. 16-cv-1933 |
| FOREST PRESERVE DISTRICT OF | |
| DUPAGE COUNTY, | Charles R. Norgle, |
| *Defendant-Appellee.* | *Judge.* |

## O R D E R

Daron Seymour-Reed,[1] a former employee at the Forest Preserve District of DuPage County, sued the District for race and sex discrimination and retaliation. The district court entered summary judgment for the District. We affirm the judgment because Reed does not provide sufficient evidence that the District fired him because of his race or sex or because he engaged in protected activity.

---

[1] The appellant refers to himself as "Reed," so we do as well.

The parties dispute certain facts, especially those regarding whether Reed met the District's legitimate performance expectations. Because Reed appeals an entry of summary judgment, the only way to assess whether his claims survive, without relying on disputed facts, is to assume that the facts for which he provides evidentiary support are as he presents them. *See Tax Track Sys. Corp. v. New Inv'r World, Inc.*, 478 F.3d 783, 786–87 (7th Cir. 2007) (considering whether defendant is entitled to summary judgment even assuming truth of plaintiff's version of events).

The District hired Reed in 2009 as a senior accounting clerk in its finance department. Reed processed payments on goods and services and other expenditures, but his job description also included processing petty cash payments. Reed was the only African-American employee, and the only man who was not a supervisor, in the finance department.

In 2011, Reed overheard a coworker comment that her supervisor's wife had "whipped" him into shape. These words conjured images of slavery to Reed. He wrote a complaint to the human resources department and requested that someone send an email to the finance department about how language affects people differently based on their backgrounds. The District investigated the incident, and it concluded that the comment was not racially motivated. Sometime after this first complaint, Reed found a photograph on the District's shared computer drive depicting two other employees in blackface on Halloween. Neither of these employees worked in Reed's department or supervised Reed. He reported the photograph to his supervisor, calling it "strange."

Two years later, the assistant director of finance approached Reed while he was carrying his lunch and asked him what kind of chicken he had purchased. This comment offended Reed because eating chicken is a cultural stereotype of African Americans and is often used pejoratively. The comment especially stood out to him because it occurred during Lent, a time when many people abstain from eating meat. Reed filed another complaint with human resources in March 2013. The District investigated Reed's complaint, and even though it found no racial animus, the assistant director apologized to Reed.

Three months later, in June, Reed complained by email to human resources about recent interactions with his supervisor. He complained that his supervisor, Jan Schroeder, was picking on him in two ways: by questioning his use of work time while he was using a dictionary and by deliberately taking a long time to review and distribute his work. He did not mention race or sex discrimination in that email.

Within one week, Schroeder assigned Reed to handle the special payments and petty cash functions of the District. In a meeting, Reed expressed his concern that, because of his race, he would be penalized for any issues with the petty cash. Reed's supervisors believed he was refusing to handle petty cash, and the director of finance and administration told Reed that if he did not like it, he could leave. Despite these bumps in the relationship, Reed scored 100% on his 2013 performance evaluation, which the District issued in March 2014.

In mid-2014, however, the parties' relationship deteriorated further. Reed complained to the director of finance and administration that Schroeder, his supervisor, had slammed work on his desk and had accused him of abusing District time. Reed did not testify that he referred to his race or sex, or to discrimination or retaliation, in this complaint. The director responded in a June memo, in which he concluded that Reed's concerns were "not valid." The memo instructed Reed to bring future concerns first to supervisors in his department before he spoke to human resources. It warned that "when one fails to follow expectations it can lead to repercussion [sic], including disciplinary action."

On the morning of a mandatory training six weeks later, Reed stopped by the office to confirm with Schroeder that he could attend the training during what was a busy period for the department. Schroeder accused Reed of skipping the session and ordered him to attend. At the seminar he read a text message from his wife then put his phone away, but after the training, the presenter reported that Reed had been using his cell phone throughout most of the training. The District suspended Reed for half a day without pay on the grounds that he had refused to attend the training, had been insubordinate to his supervisor, and had violated the District's cell phone policy, which permits "reasonable" use of personal cell phones. Reed filed a charge of race discrimination and retaliation with the Equal Employment Opportunity Commission within a month.

Three months later, in December 2014, the District suspended Reed with pay pending an investigation because an employee reported that Reed yelled at and was disrespectful to Schroeder. At the end of the investigation, four months after Reed had filed the EEOC complaint, the District fired him, citing persistent poor performance and lack of professionalism.

The EEOC issued Reed a right-to-sue letter, and Reed sued the District for race and sex discrimination and retaliation under the Illinois Human Rights Act, the Civil

Rights Act of 1964, and 42 U.S.C. § 1981. After the district court dismissed the § 1981 claims, the District moved for summary judgment on the remaining claims. The court granted the District's motion and entered judgment in its favor, ruling that Reed had not submitted enough evidence to state a *prima facie* case of discrimination or to establish a causal connection between his protected activity and his termination.

On appeal, Reed argues generally that the district court erred in entering summary judgment because he provided sufficient evidence that the District fired him because of his race and sex and in retaliation for complaining about discrimination. We review the district court's entry of summary judgment de novo, construing the evidence and drawing all reasonable inferences in Reed's favor. *Smith v. Chi. Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015).

In employment discrimination and retaliation cases, we have abolished the distinction between "direct" and "indirect" evidence of discrimination and retaliation. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017) (applying *Ortiz* to retaliation claims). "Evidence is evidence," *Ortiz*, 834 F.3d at 765, and we ask "simply whether the evidence would permit a reasonable factfinder to conclude" that the plaintiff's race or sex (in this case) "caused the discharge or other adverse employment action," *id*. Within this inquiry, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), is still available, *see Ortiz*, 834 F.3d at 766, and the parties use it here.

Reed contends that the District fired him because he is African-American and a man. The District does not dispute that these are protected classes. Regarding whether he was meeting his employer's legitimate business expectations, he argues that the District disparately applied its expectations to him as compared to similarly situated non-African-American, female co-workers in the finance department, who were not disciplined or fired. In cases in which the employer allegedly enforces job expectations in a disparate manner, we have noted that the "expectations themselves may be tainted with discrimination," so the plaintiff needs to show only that he was "singled out for worse treatment" than similarly situated employees. *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 846 (7th Cir. 2007) (quoting *Crawford v. Ind. Harbor Belt R.R.*, 461 F.3d 844, 846 (7th Cir. 2006)).

Reed takes this approach, so he must produce evidence that the District enforced one set of expectations for African Americans and men, and another for female and non-African-American employees. Reed attested that the other two senior accounting

clerks engaged in similar behavior but were not disciplined the way he was. But other than the job titles, Reed has nothing to support the notion that they were similarly situated in material respects—including disciplinary histories. He testified that both women used their electronic devices in the office and that Thakkur had made other mistakes, such as accidentally printing on check paper. He also produced a document stating that a former senior accounting clerk was accused of unprofessional conduct but not discharged. This evidence is too vague to raise a jury question about whether Reed was singled out because of his race and sex. *Pantoja*, 495 F.3d at 847; *Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 662 (7th Cir. 2016); *Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 860 (7th Cir. 2008).

Even if Reed could demonstrate a *prima facie* case of discrimination, he would not be able to make the required showing that the District's reasons for suspending and firing him—insubordination and poor performance—were pretext. Reed did submit some evidence that he met his employer's expectations: his performance review for the year 2013, on which he scored 100%, and his deposition testimony, in which he denied yelling at his supervisor or violating the cell phone policy. But a pretext analysis evaluates the honesty of the employer's explanation, not its validity or reasonableness. *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013). Reed's evidence does not suggest that the District used performance reasons to cover its discrimination; it shows only that he disagreed with how the District viewed his interactions with his supervisor and took the word of the seminar presenter over his own—not that it lied about its reasons for firing him. *See Hnin v. TOA (USA), LLC*, 751 F.3d 499, 506 (7th Cir. 2014).

Reed also presented evidence that the assistant director of finance made a racially discriminatory remark—about his lunch of chicken—over a year and a half before his discharge. This is far from being evidence that there was a discriminatory motive for his firing. The assistant director had no role in his termination, and "stray remarks" do not support an inference of discrimination unless the decisionmaker or someone with influence over the decision made the comment around the time of, or about, the adverse action. *See Sun v. Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 813 (7th Cir. 2007) ("[S]tray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment."). Similarly, the other two complained-of incidents are not evidence of discrimination because the actors did not supervise Reed. Reed's evidence of sex discrimination is even more scant: he was the only non-supervisory man in his department. Overall, Reed has not presented enough evidence to allow a reasonable jury to find that the District fired him *because of* his race or sex. *See Ortiz*, 834 F.3d at 765.

Reed next argues that he produced sufficient evidence that the District retaliated against him for complaining about race discrimination. For us to reverse summary judgment on Reed's retaliation claim, a factfinder must reasonably be able to infer that (1) Reed engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the activity and the adverse action. *Lauth*, 863 F.3d at 716.

Unquestionably, Reed meets the first two prongs. He presents evidence of four instances of protected activity in the years before he was discharged: he spoke to his supervisor about a racist photograph on the District's network, he filed two complaints with human resources alluding to race discrimination, and he filed an EEOC charge.[2] But Reed's complaints to his supervisors in March, June, and July 2013 and June 2014 were not protected activity. For a complaint to be protected activity, the employee must make clear that he is protesting actions prohibited under Title VII, not merely a negative environment or a mean supervisor. *See Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016). The causation analysis must therefore focus on whether any of the four instances of protected conduct caused Reed's discharge.

Reed argues that because he "had been complaining about discrimination in the finance department throughout 2013," in retaliation the District built a record of performance issues to discharge him. But, as noted earlier, he has no evidence that the District did not genuinely believe he underperformed and was insubordinate, in particular after June 2014. Reed also points to the charge of discrimination that he filed with the EEOC in September 2014—the latest instance of protected activity—only four months before his discharge. But suspicious timing alone is rarely sufficient evidence of causation to preclude summary judgment. *Morgan v. SVT, LLC*, 724 F.3d 990, 998 (7th Cir. 2013). The four months between the last protected activity and the adverse action is not close enough to carry the day. *See, e.g., Silk v. Bd. of Trs.*, 795 F.3d 698, 710 (7th Cir. 2015) (a few weeks not enough to imply causation); *Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) (periods of five weeks and two months insufficient). Because Reed provides no other circumstantial evidence of causation, a reasonable jury

---

[2] Although the district court mistakenly said that a year passed between Reed's last protected activity and his discharge, the EEOC charge that he filed four months before his discharge is indeed protected activity. *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015).

could not find that he was discharged in retaliation for engaging in activity protected under Title VII.

Therefore, we AFFIRM the judgment.