**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 19, 2019[*]
Decided February 26, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 18-1162

| | |
|---|---|
| TRAVIS D. WILLIAMS, | Appeal from the |
| *Plaintiff-Appellant,* | United States District Court for the |
| | Eastern District of Wisconsin. |
| *v.* | No. 14-C-452 |
| LESLIE PATTON, *et al.,* | William C. Griesbach, |
| *Defendants-Appellees.* | *Chief Judge.* |

**O R D E R**

Travis Williams suffered injuries after Wisconsin State Trooper Derek Bergum rear-ended his car using the "Pursuit Intervention Technique" while pursuing him in a high-speed chase. Williams sued Bergum and other officers, and also two jail nurses, generally accusing them of inadequately addressing his medical needs. The district

---

[*] We agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

court entered summary judgment in favor of the defendants. Because all defendants acted reasonably, we affirm.

We construe the facts in the light most favorable to Williams. *See Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1054 (7th Cir. 2018). On May 8, 2013, Williams led police on a high-speed chase in Wisconsin, driving at speeds exceeding 100 miles per hour. The chase ended when Trooper Bergum rear-ended Williams's car and placed him under arrest. Williams complains about three episodes that followed.

The first episode occurred in the immediate aftermath of the arrest. Williams complained of neck, back, and leg pain, so Trooper Bergum called an ambulance to take him to the hospital. The hospital released him for transport to the jail a few hours later because medical staff had concluded that his injuries did not require hospitalization. Medical staff told Williams to take Tylenol or ibuprofen as needed for pain.

The second episode occurred after deputies transported Williams from the hospital to the Racine County Jail for booking. Trooper Bergum arrived later to complete the booking process. By that time Williams had fallen asleep. Neither Trooper Bergum nor the jail's intake officer forwarded any information about his medical status to the jail's medical staff. Within one day of booking, Williams received Tylenol for his pain, and within two days he underwent a medical screening. At the screening Williams stated that he did not have any physical limitations on his mobility that required immediate accommodations. A week later he said that he could not stand or walk, so medical staff evaluated him again. They found no acute abnormalities, and several staff members reported that they had seen him stand and walk without assistance. A few days later, Williams asked medical staff for a cream to treat his dry skin and an extra mattress and pain pills to mitigate pain in his back, legs, and hips. A nurse administered Tylenol and the cream but did not give Williams the extra mattress.

The third episode stretched over the next year. A month after the booking, Williams complained that his Tylenol dosage was ineffective and that he needed a plastic knee brace and a wrist bandage. Medical staff increased his Tylenol dosage. After Williams complained again, a nurse switched him to ibuprofen. The following month Williams asked for cream for his skin, and artificial tears and an antibiotic for an eye condition. He received all three. When Williams's eyes were still bothering him over the next two months, a nurse switched the antibiotics twice. Later Williams repeated his requests for a knee brace, a wheelchair, and an extra mattress. A doctor examined him and determined that none of these accommodations was medically necessary. When

Williams continued to complain about itchy skin and dry eyes the next month, he received more cream and artificial tears.

Dissatisfied with his treatment, Williams took steps that led to this suit. He filed grievances about the denied items (the extra mattress, wheelchair, and knee brace) and his problems getting cream, antibiotics, and pain medicine. After complaint examiners denied relief, Williams sued Trooper Bergum, the intake officer, two nurses, and the complaint examiners. The district court screened his complaint, *see* 28 U.S.C. § 1915A, and allowed Williams to proceed on the following claims: (1) Trooper Bergum violated the Fourth Amendment by not reporting Williams's injuries to the jail's staff; (2) the intake officer deprived him of due process by not forwarding the hospital's records to the prison medical staff; (3) the complaint examiners deprived him of due process by denying his grievances; and (4) the nurses violated his constitutional right to objectively reasonable medical care.

As the case moved forward, the judge denied Williams's repeated motions for recruited counsel. The judge explained that because Williams had filed many "very lucid" documents in previous cases, he could competently litigate this case. Williams later argued that he needed counsel because the defendants were recording him and planned to put him in segregation. The judge again declined to recruit counsel, reasoning that Williams could still communicate with the court and conduct discovery. In a later order denying a renewed motion for counsel, the judge cited Williams's extensive litigation history and ability to respond to motions "amply and extensively."

The defendants eventually moved for summary judgment. The judge granted the motion, holding that no jury could find that Trooper Bergum personally knew about Williams's medical needs or that any other defendant behaved unreasonably. Williams asked for reconsideration, but the judge denied the motion because Williams presented no new evidence or new controlling law.

On appeal Williams first contends that the district court erroneously entered summary judgment in favor of Trooper Bergum. When Bergum arrived at the jail, Williams had not yet received a judicial determination of probable cause, so the Fourth Amendment standard of reasonableness governs. *See Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). Williams maintains that by not telling the jail's staff that he had medical limitations, Trooper Bergum violated the Fourth Amendment. Four factors inform whether Bergum behaved unreasonably, but we need consider only the first one: whether the officer had actual notice of Williams's medical needs. *See id.* No evidence suggests that he did. When Williams complained of injuries after his arrest, Trooper

Bergum called an ambulance to take him to a hospital to see *if* he needed treatment. After that Bergum knew only that the hospital had released him a few hours later, and when Trooper Bergum came to the jail to complete the booking process, Williams was sleeping. Thus no rational jury could conclude that Trooper Bergum knew of any medical needs.

Next, Williams contends that the district court erroneously entered summary judgment in favor of the intake officer. He argues that because the intake officer never passed along the hospital's discharge forms to the jail's medical staff, she violated his right to due process as a pretrial detainee. *See Kinglsey v. Hendrickson,* 135 S. Ct. 2466, 2473 (2015). But even if she did not forward these documents, no harm befell Williams. The documents recommended only that he receive Tylenol for pain, and he received it the day after his booking. Moreover, during a medical screening two days after booking, Williams reported no problems that required immediate accommodations. With no injury arising from the absence of the records, no constitutional tort occurred. *See Armstrong v. Daily,* 786 F.3d 529, 553 (7th Cir. 2015).

Williams next argues that the complaint examiners deprived him of due process by wrongly denying his grievances. But he acknowledges that they read the grievances, considered his medical file, and relied on the medical staff, which is all that was constitutionally required of them. *See Miranda v. County of Lake*, 900 F.3d 335, 343 (7th Cir. 2018); *McCann v. Ogle County*, 909 F.3d 881, 888 (7th Cir. 2018). The complaint examiners were entitled to summary judgment.

Williams also contends that the two nurses unreasonably ignored his medical needs. One nurse, he complains, denied his request for a knee brace and more drugs to treat his pain. But even if the nurse could prescribe those treatments (no evidence suggests that she could), a mere disagreement with a medical professional's otherwise reasonable treatment is not a basis for a constitutional claim. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Based on Williams's reports of pain, the nurse adjusted doses of Tylenol and ibuprofen, and no medical professional has opined that a knee brace or other drugs were medically necessary. Thus, a jury could not rationally conclude that the nurse's treatment was such a significant "departure from accepted professional standards or practices" that it was objectively unreasonable. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see McCann*, 909 F.3d at 887. Regarding the other nurse, Williams argues that she ignored his eye and skin conditions. But the record shows that each time Williams complained about his eyes, he received eye drops and antibiotics; and every time he complained about his skin, he received more cream. Because no

evidence suggests that these treatments were a significant departure from professional norms, summary judgment was warranted. *See Pyles*, 771 F.3d at 409.

Two final procedural matters remain. First, Williams challenges the denial of his requests for counsel. When addressing a motion for pro bono counsel, the judge must decide whether the plaintiff appears competent to litigate his claims, given their difficulty. *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc). Williams says that the court did not address his "psychological history, intellectual capacity, education, communication skills, [and] litigation skills." But the judge did just that when he concluded that the case was not too complex for Williams given that he was an experienced and "lucid" litigator who "amply and extensively" responded to motions with neat and clear arguments. Second, Williams argues that the judge should not have awarded costs to the defendants under Rule 54(d)(1) of the Federal Rules of Civil Procedure because they did not reply to his objection to costs. But we give district courts "virtually complete deference" when reviewing an award of costs. *See Lauth v. Covance, Inc.*, 863 F.3d 708, 718 (7th Cir. 2017) (quotation marks omitted). Though Williams objected to the fees associated with acquiring a transcript of his deposition, a court may tax as costs the fees for transcripts that are "necessarily obtained for use in the case." 28 U.S.C. § 1920(2); *Montanez v. Simon*, 755 F.3d 547, 558 (7th Cir. 2014). Obtaining a transcript of the plaintiff's deposition is a necessary part of the defense case.

We have considered Williams's other arguments, and none has merit.

AFFIRMED